J-S83003-17

2018 PA Super 223

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
         v.                   :
                              :
                              :
                              :
JAMES ALBERT STRAFFORD,       :
                              :
         Appellant            :  No. 3827 EDA 2016

Appeal from the Judgment of Sentence October 20, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0003932-2015

BEFORE: GANTMAN, P.J., OLSON, J., and DUBOW, J.

OPINION BY DUBOW, J.:                        Filed:  August 6, 2018

Appellant, James Albert Strafford, appeals from the Judgment of

Sentence entered by the Delaware County Court of Common Pleas following

his convictions after a jury trial of Indecent Assault of a Person less than 13

years of age, Corruption of a Minor, and Involuntary Deviate Sexual

Intercourse with a Child.[1]  After careful review, we affirm.

Briefly, between June 2013 and December 2014, Appellant sexually

abused the eight-year-old victim.  Appellant, a friend of the victim's cousin

and known to the victim as "Jay," was a frequent overnight guest in the

victim's home.  In December 2014, the victim spontaneously disclosed the

abuse to his older brother and then to his mother—while Appellant was in

_____

[1] 18 Pa.C.S. § 3126(a)(7); 18 Pa.C.S. § 6301(a)(1)(ii); and 18 Pa.C.S. §
3123(b), respectively.

the house.  The victim's mother reported the abuse that night to Pennsylvania State Police, and the victim provided a video-recorded statement to a child forensic interviewer on December 8, 2014.

The Commonwealth charged Appellant with, *inter alia*, the above offenses.  On March 18, 2015, the Commonwealth filed (1) a Petition to Admit Out-of-Court Statements Under the Tender Years Hearsay Exception, and (2) a Motion to Allow a Child Witness to Testify Under Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act.  Following a hearing, the trial court granted the Commonwealth's Motions.

On August 3, 2016, a jury convicted Appellant of Indecent Assault of a Person less than 13 years of age, Corruption of a Minor, and Involuntary Deviate Sexual Intercourse with a Child.

On October 20, 2016, the trial court imposed an aggregate term of six to twelve years' incarceration, followed by five years' probation.  At the time, Indecent Assault of a Person less than 13 years of age and Involuntary Deviate Sexual Intercourse with a Child were enumerated Tier III offenses under the Sexual Offender Registration and Notification Act ("SORNA") and required lifetime registration as a sexual offender.  42 Pa.C.S. § 9799.14(d);

42 Pa.C.S. § 9799.15(a)(3).[2] At sentencing, Appellant signed a notification form stating that he understood his registration requirements.

On November 18, 2016, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues on appeal:

1) Whether the lower court erred in admitting the out of court statements (including related audio recording and contemporaneous writings) that the complainant allegedly supplied to his brother, his mother, and to a forensic interviewer since the time, content, and circumstances of those statements did not demonstrate sufficient indicia of reliability as required for the tender years exception to the hearsay rule?

2) Whether the lower court erred in permitting the minor complainant to testify by contemporaneous alternative means (closed circuit video) since it was not established that testifying either in an open forum in the presence and full view of the finder of fact or in [Appellant's] presence would result in him suffering from serious emotional distress such that it would substantially impair his ability to reasonably communicate?

3) Whether the evidence is insufficient to sustain the convictions for involuntary deviate sexual intercourse, indecent assault, and corruption of minors since Appellant was not identified as the offender beyond a reasonable doubt, especially where the complainant was not asked to identify him, did not reference his last name, and where no stipulation to identity was presented to the jury?

Appellant's Brief at 5.

_____

[2] Corruption of a Minor was an enumerated Tier I offense under SORNA and required 15-year registration as a sexual offender. 42 Pa.C.S. § 9799.14(b); 42 Pa.C.S. § 9799.15(a)(1).

As an initial matter, we address an issue of first impression regarding the legality of Appellant's Judgment of Sentence.

## Legality of Sentence

In his Reply Brief, Appellant challenges the legality of his sentence based on ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) (OAJC) (holding that SORNA's enhanced registration requirements are punitive and, therefore, applying SORNA retroactively is a violation of the *ex post facto* clauses of the U.S. Constitution and Pennsylvania Constitutions). Appellant argues that his lifetime registration requirement—which he argues now constitutes direct criminal punishment rather than a collateral civil consequence in light of ***Muniz*** and ***Commonwealth v. Hart***, 174 A.3d 660 (Pa. Super. 2017)—exceeds the lawful statutory maximum sentences applicable to his convictions.[3] Appellant's Reply Brief at 1-4 (citing 18 Pa.C.S. § 1103 (entitled "Sentence of imprisonment for felony")).[4]

---

[3] Based on this Court's research, this appears to be an issue of first impression post-***Muniz***.

[4] On May 15, 2018, this Court issued a Rule to Show Cause directing the Commonwealth to explain "why Appellant's Judgment of Sentence should not be vacated in light of [***Muniz***]." Rule to Show Cause Order, filed 5/15/18, at 1. On June 14, 2018, the Commonwealth responded that ***Muniz*** is inapplicable because Appellant's crimes were committed after SORNA's enactment. Response, filed 6/14/18, at 1-6. We agree. SORNA was enacted in December 2012 and requires lifetime registration for Indecent Assault of a Person less than 13 years of age and Involuntary Deviate Sexual Intercourse with a Child. Because Appellant committed his offenses between June 2013 and December 2014, after the effective date of SORNA, the
*(Footnote Continued Next Page)*

- 4 -

This court may review issues regarding the legality of sentence *sua sponte*. **Commonwealth v. Edrington**, 780 A.2d 721, 723 (Pa. Super. 2001). "We review the legality of a sentence *de novo* and our scope of review is plenary." **Commonwealth v. Butler**, 173 A.3d 1212, 1215 (Pa. Super. 2017).

Appellant correctly observes that the **Muniz** Court found that the registration requirement mandated by SORNA is punitive. **See Muniz**, **supra** at 1218. We, thus, begin our analysis of Appellant's challenge with a review of various statutes and legal principles relating to punishments.

Our Supreme Court has explained the well-settled principle that the General Assembly "has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes[.]" **Commonwealth v. Eisenberg**, 98 A.3d 1268, 1283 (Pa. 2014) (citation and quotation omitted).

Our General Assembly has authorized courts to impose specific punishments when fashioning a sentence, and specified maximum terms and amounts of those punishments. These categories of punishment include (1) partial or total confinement, (2) probation, (3) state or county intermediate

*(Footnote Continued)* ───────────────

application of SORNA does not run afoul of **Muniz**'s holding regarding the violative application of SORNA's punitive registration requirements to offenders who committed crimes before 2012.

punishment, (4) a determination of guilt without further penalty, and (5) a fine. 42 Pa.C.S. § 9721.

With respect to the punishment of incarceration, 18 Pa.C.S. § 1103 governs the maximum authorized sentence of imprisonment for felony convictions. By a separate statute, these maximum allowable terms also apply to probationary sentences, a different category of punishment authorized by the General Assembly. In 42 Pa.C.S. § 9754(a), the legislature directed that "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, **which term may not exceed the maximum term for which the defendant could be confined**, and the authority that shall conduct the supervision." *Id.* (emphasis added). Thus, the legislature explicitly connected the authorized punishments of incarceration and probation by statute.

However, most sentencing alternatives are not tied to the maximum authorized term of incarceration. For example, the legislature has authorized courts to include in sentences the requirement that a defendant pay a fine or restitution. These categories of punishment are not limited by the maximum period of incarceration; rather, the legislature set different maximum authorized amounts of punishment a court may impose as part of its sentence. *See*, *e.g.*, 18 Pa.C.S. § 1101 (defining maximum fines); 18

Pa.C.S. § 1106 (providing statutory scheme for restitution for injuries to person or property).

In SORNA the legislature authorized courts to include periods of registration as part of a sentence. Similar to the treatment of the payment of fines or restitution, the legislature did not tie the period of registration to the length of incarceration. *See* 42 Pa.C.S. § 9799.14 ("Sexual offenses and tier system"); 42 Pa.C.S. § 9799.15 ("Period of registration"). SORNA's registration provisions are not constrained by Section 1103. Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration. The legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required courts to impose registration requirements in excess of the maximum allowable term of incarceration.

Accordingly, we conclude that Appellant's lifetime registration requirement authorized by SORNA does not constitute an illegal sentence. Appellant is not entitled to relief.

**Tender Years Hearsay Act**

Appellant asserts that the trial court erred in admitting the child-victim's out-of-court statements through the hearsay testimony of his brother, his mother, and a child forensic interviewer pursuant to the hearsay exception codified in the Tender Years Hearsay Act. Appellant's Brief at 14-

23.  Appellant claims that there were not sufficient indicia of reliability to meet the requirements of 42 Pa.C.S. § 5985.1(a)(1).

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citations omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa. Super. 2013) (citation and quotation marks omitted).

The Tender Years Hearsay Act creates an exception to the general rule against hearsay for a statement made by a child who was twelve years old or younger at the time of the statement. 42 Pa.C.S. § 5985.1(a); **Commonwealth v. Barnett**, 50 A.3d 176, 182 (Pa. Super. 2012). Relevant to this appeal, a court may admit a child-victim's out-of-court statement for the truth of the matter asserted when "(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content[,] and circumstances of the statement provide sufficient indicia of reliability; and (2) the child [] testifies at the proceeding[.]" 42 Pa.C.S. § 5985.1(a)(1)-(2).

Pursuant to this statute, "indicia of reliability" include, *inter alia*, "the spontaneity of the statements, consistency in repetition, the mental state of

the declarant, use of terms unexpected in children of that age[,] and the lack of a motive to fabricate." **Barnett**, 50 A.3d at 182-83 (citations omitted).

The Honorable Kevin F. Kelly, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's evidentiary claim regarding the child-victim's out-of-court statements. After a thorough review of the certified record, the briefs of the parties, the applicable law, and the trial court's Opinion, we conclude that there is no merit to Appellant's evidentiary claim on appeal. Accordingly, we affirm on the basis of the trial court's June 26, 2017 Opinion. **See** Trial Court Opinion, 6/26/17, at 14-23 (concluding it properly admitted the statements under Section 5985.1 because: (1) the child-victim's statements to his brother and mother were spontaneous and impulsive; (2) the child-victim's statements to the child forensic interviewer were consistent with these prior spontaneous statements to his brother and mother; (3) there was no suggestion that the child victim had any motive to fabricate; and (4) the child victim testified at trial).

**Child's Testimony by Contemporaneous Alternative Method**

In his next issue, Appellant claims that the trial court erred in allowing the child victim to testify by closed-circuit television because the Commonwealth failed to meet its burden of proving that testifying in Appellant's presence would have caused "serious emotional distress that

would substantially impair his ability to reasonably communicate." Appellant's Brief at 29. Rather, Appellant avers that the Commonwealth merely showed that the child would be "agitated," which does not meet the applicable standard. *Id.*

42 Pa.C.S. § 5985 permits a court to conduct an *in camera* hearing to determine whether a child victim should testify by contemporaneous alternative method outside of the courtroom and the jury's presence. In order to allow this alternative method, the court must find "that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the [child] suffering serious emotional distress that would substantially impair the [child's] ability to reasonably communicate." 42 Pa.C.S. § 5985(a.1). The court may observe and question the child inside or outside the courtroom, or hear testimony from a parent, custodian, or any other person that has dealt with the child "in a medical or therapeutic setting." 42 Pa.C.S. § 5985(a.1)(1)-(2).

After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's claim. Accordingly, we affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion at 7-14 (concluding it properly permitted the eight-year-old victim to testify by closed-circuit television to avoid serious emotional distress because the victim's mother testified in detail about the victim's ongoing behavioral

issues after disclosing the abuse as follows: (1) experiencing frequent nightmares; (2) sleeping in bed with his parents; (3) bedwetting at night; (4) experiencing difficulty in school with obeying instructions from his teacher and staying focused on assigned tasks, which requires additional assistance at school; (5) becoming "very agitated" and experiencing "a complete freak out" one day when the victim believed he observed Appellant's vehicle; (6) becoming "moody" when informed of his required attendance in court; and (7) responding, when informed that Appellant may be present in court for his testimony, that he did not want to see Appellant, that he would "run out of the room" if he were present, and that if he even saw Appellant he would either conceal his face or try to hide under a table).[5]

**Sufficiency of the Evidence**

Appellant avers that the evidence was insufficient to support his convictions for Indecent Assault of a Person less than 13 years of age, Corruption of a Minor, and Involuntary Deviate Sexual Intercourse with a Child.  Appellant's Brief at 30-32.  Appellant specifically challenges the

---

[5] Insofar as Appellant suggests that a child victim must essentially break down in his presence before permitting testimony by contemporaneous alternative method, we need not belabor the absurdity of this proposition given our legislature's clear policy expression in this regard.  **See** 42 Pa.C.S. § 5981 (declaring the General Assembly's intent to provide special procedures as necessary in order to protect and to promote the best interests of victims and material witnesses of this Commonwealth who are under 18 years of age during their involvement with the criminal justice system).

element of identity insofar as the victim did not make an in-court identification of Appellant as the perpetrator.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id*. at 40. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id*. at 39-40.

"A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person[,] or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age[.]" 18 Pa.C.S. § 3126(a)(7).

Corruption of a Minor is defined, in relevant part, as:

Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or

- 12 -

encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

"A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010). "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citation omitted).

Our Supreme Court has stated that "any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973) (citations omitted).

Where a victim testifies via closed-circuit television and, thus, does not directly identify the defendant in court, the Commonwealth may establish the defendant as the perpetrator based on alternative circumstantial

evidence, *e.g.*, the victim's testimony coupled with other contextual evidence or witness identifications. **Brooks**, 7 A.3d at 857.

Our review of the record supports the trial court's conclusion that there is no merit to Appellant's sufficiency claim. Because the victim testified via closed-circuit television, in-court identification of Appellant was impossible. Nevertheless, as the trial court aptly observed, the victim's testimony repeatedly identifying the perpetrator as "Jay" was sufficient to establish that Appellant was the perpetrator of the sexual abuse when coupled with: (1) the in-court identifications by the victim's mother and the victim's brother; (2) the fact that, after the victim disclosed to his brother the abuse by "Jay" while Appellant was inside the home, the victim's brother then confronted Appellant; (3) other circumstantial evidence that made clear Appellant was the person the victim referred to as "Jay," who frequently stayed overnight in the victim's home; and (4) two defense witnesses who referred to Appellant as "Jay" during their testimony. **See** Trial Court Opinion at 31-39. Accordingly, we affirm on the basis of the trial court's Opinion.

The parties are instructed to attach a copy of the trial court's June 26, 2017 Opinion to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/18

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA   :   NO. 3932-15[1]

              v.           : 

                          :

JAMES ALBERT STRAFFORD       :   Superior Court No. 3827 EDA 2016

A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth
Steven M. Papi, Esquire – Attorney for James Albert Strafford

## OPINION

Kelly, J.                                         **Date: June 26, 2017**

### I. Case History

A criminal complaint was filed on December 10, 2014, by Trooper Jonathan Pipes, Pennsylvania State Police, charging James Strafford (hereinafter referred to as "Defendant" or "Strafford") with, *inter alia*, indecent assault[2] and corruption of minors.[3]

On March 18, 2015, the Commonwealth simultaneously lodged its Petition to Admit Out-of-Court Statements Under the "Tender Years Hearsay Exception", 42 Pa.C.S. § 5985.1 [*sic*],[4] as well as a Motion to Allow a Child Witness to Testify Under the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act", 42 PA.C.S. §5985 [*sic*].[5] *See* Petition to Admit Out-of-Court Statements Under the "Tender Years Hearsay Exception" and Motion to Allow a Child Witness to Testify Under the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act.[6]

An evidentiary hearing as then scheduled took place on March 24, 2015, relevant to these two (2) prosecution pleadings.[7] N.T. 3/24/15. *See also* Hearing Notice dated March 20, 2015.

By an order dated April 13, 2015, this court granted and denied in part the Commonwealth's petition permitting the prosecution to introduce into evidence only some of the minor complainant's proffered out-of-court statements, assuming it called him to testify at any such listing. *See* Order dated April 13, 2015.

The court per a separate order of the same date (April 13, 2015) granted the prosecution's motion and allowed the minor complainant to testify for purposes of his witness appearances in the proceedings at bar, including but not limited to the preliminary hearing, through the contemporaneous alternative method of close circuit television. *See* Order dated April 13, 2015.

A preliminary hearing was held before the magisterial district court on June 26, 2015, and after the Commonwealth's presentation of evidence, the Defendant was held for trial court proceedings as to all charged offenses, as well as an amended involuntary deviate sexual intercourse[8] allegation. *See* Criminal Complaint and Probable Cause Affidavit, and AOPC Case Docket.

Defendant Strafford on July 29, 2015, was formally arraigned before the trial court at which time the Office of the Delaware County District Attorney lodged against him a criminal information averring, *inter alia*, the following: Count 1 - Indecent Assault (Person less than thirteen (13) years of age);[9] Count 11 - Corruption of Minors (Course of Sexual Offending);[10] and Count 33 - Involuntary Deviate Sexual Assault (Person less than sixteen (16) years of age).[11]

Resulting from such a written stipulation of the attorneys dated January 12, 2016, this court via an order of January 28, 2016, directed the Delaware County Children and Youth Services to deliver to it a copy of that child welfare agency's entire file regarding the minor

2

complainant for the court to conduct such an agreed *in camera* review. *See* Order dated January 28, 2016. *See also* Stipulation dated January 12, 2016.

Following the stipulated *in camera* review, the court through an order dated February 8, 2016, released to defense counsel and the Commonwealth's attorney copies of the Delaware County Children and Youth Services documents it had most modestly redacted.[12] *See* Order dated February 8, 2016. *See also* Stipulation dated January 12, 2016, and Order dated January 28, 2016.

On July 28, 2016, the Defendant lodged a counseled, Pretrial Motion in Limine [*sic*]. *See* Pretrial Motion in Limine [*sic*]. This filing advanced the following: Count 1 - Motion to Quash Certain Counts; Count 2 - Motion to Permit an Observer in the Video Room While the Accuser Testifies; Count 3 - Motion for Supplemental Questions in General Voir Dire [*sic*]; and Count 4 - Motion to Preclude References to the Accuser as "Victim" (Subcounts I, II, and III). *See* Pretrial Motion in Limine [*sic*].

On July 29, 2016, the prosecution orally advanced, of-record, in a robing room conference, an application to amend the criminal information. The Commonwealth via this request sought to amend the charges at bar to note respective offense dates of June 1, 2013, through December 7, 2014, as well as to reflect the involuntary deviate sexual intercourse allegation was that of a child.[13] This amendment application, without objection, was granted and additionally memorialized by this court per an order of that same day (July 29, 2016). *See also* Order dated July 29, 2016. *See generally* Pa.R.Crim.P. 564.

At this same robing room conference (July 29, 2016), the court reviewed with the attorneys the defense's most recently lodged *in limine* motion. N.T. 7/29/16, pp. 5-19. *See* Pretrial Motion in Limine [*sic*]. Stemming from the prosecution's permitted amendment to its

3

criminal information, defense counsel acknowledged that count 1 of his motion (Motion to Quash Certain Counts) was rendered moot. Relevant to count 2 of this *in limine* pleading (Motion to Permit Observer), the attorneys had reached an agreement that the live video conferencing trial testimony of the minor complainant, S.C.,[14] include at all times both the physical appearances of this juvenile and the victim services representative then present so as to allow the jury the opportunity to observe visually and aurally those verbal and/or nonverbal interactions between the minor complainant and the victim advocate, if any. Following a discussion concerning the court's *voir dire*, the Defendant's lawyer determined the third count of his motion (Motion for Supplemental Questions) was moot and withdrew the same. Regarding Count 4 – Motion to Preclude References to the Accuser as "Victim," subcounts I (References to the Accuser at the "Victim" Violate the Presumption that James Strafford is Innocent) and II (At Trial, References to the Accuser as the "Victim" by the Court or Prosecutors would Improperly Express a Personal Belief that the Accuser is Telling the Truth, or that a Crime was committed, or that Mr. Strafford is Guilty) were denied, while subcount III (During Trial the Court, the Parties, and All Witnesses Should Refer to Individuals by Their Names) was withdrawn by Defendant Strafford's attorney. N.T. 7/29/16, pp. 5-19. The court subsequent to this of-record robing room conference entered an order further memorizing these dispositions of the defense's *in limine* applications. *See* Order dated July 29, 2016.

A jury trial commenced on August 1, 2016, and continued over the next two (2) days, concluding on August 3, 2016. N.T. 8/1/16. N.T. 8/2/16. N.T. 8/3/16. The jury by its verdict found Defendant Strafford guilty of the following: Count 1 – Indecent Assault;[15] Count 11 – Corruption of Minors (Course of Sexual Offending);[16] and Count 33 - Involuntary Deviate Sexual Intercourse with a Child.[17] N.T. 8/3/16, pp. 119-23. The Commonwealth just after the

4

jury's verdict advanced in open court, an oral, bail revocation application. This court increased the Defendant's bail and the same was additionally memorialized through an order of that same date (August 3, 2016). N.T. 8/3/16, pp. 123-26, 130-31. *See also* Order dated August 3, 2016. As such aids, the court ordered a presentence investigation and a psychosexual evaluation. N.T. 8/3/16, p. 129. *See also* Presentence Investigation Report Request. *See generally* Pa.R.Crim.P. 702.

On this date (August 3, 2016), Defendant Strafford with the advice and consent of counsel also waived the statutory requirements[18] that the necessary sexually violent predator assessment and determination take place before sentencing. *See* 42 Pa.C.S. §§9799.12 and 9799.24(a). The Defendant in consultation with his lawyer additionally executed such a waiver form. *See* Waiver of Requirements Under 42 Pa.C.S. §9799.24 ... . N.T. 8/3/16, pp. 127-29. Sentencing in the above-captioned matter was scheduled for October 20, 2016. N.T. 8/3/16, p. 130.

On August 8, 2016, the court entered an order directing Defendant Strafford to undergo at the direction of the Pennsylvania Sexual Offenders Assessment Board a sexual violent predator evaluation. *See* Order dated August 8, 2016. *See also* 42 Pa.C.S. §§9799.12; 9799.14(d); and 9799.24(a).

A sentencing hearing took place on October 20, 2016, during which the court sentenced the Defendant as follows: Count 33 (Involuntary Deviate Sexual Assault with a Child)[19] - A term of seventy-two (72) through one hundred forty-four (144) months incarceration at a state correctional institution; Count 1 (Indecent Assault (Person less than thirteen (13) years of age))[20] — A five (5) year period of state probationary oversight to run consecutive to count 33 (involuntary deviate sexual intercourse);[21] and Count 11 (Corruption of Minors — Course of

5

Sexual Offending)[22] – A term of five (5) years state probationary oversight to be served consecutive to the imprisonment of the involuntary deviate sexual intercourse count (33) and concurrent to the same period of probation per count 11 (indecent assault).[23] The Defendant was afforded the applicable time served credit and without objection, deemed ineligible for risk reduction recidivism incentive consideration.[24] N.T. 10/20/16, pp. 42-45. *See also* Certificate of Imposition of Judgment of Sentence. The court as well reviewed with Defendant Strafford his understanding and counseled execution of the Offender's Notification of Sentencing Form listing him as a Tier III registrant, subject to lifetime registration. N.T 10/20/16, pp. 48-49. *See also* Defendant's Sexually Violent Offenders Notification at Sentencing: 42 Pa.C.S. 9791. Et Seq. Form, and 42 Pa.C.S. §§9799.12 and 9799.14(d)).

The Sexual Offenders Assessment Board issued its report on October 28, 2016, finding Defendant Strafford did not meet the statutory criteria to be classified a sexually violent predator. *See* Sexual Offenders Assessment Board Sexually Violent Predator Assessment. *See also* 42 Pa.C.S. §9799.24(b)(d). The prosecution thus did not file such a hearing praecipe. *See* 42 Pa.C.S. §9799.24(e).

No timely or post-sentence motions otherwise were lodged before this court.

On November 18, 2016, the Defendant filed a counseled Notice of Appeal from this court's sentencing judgment. *See* Notice of Appeal dated November 18, 2016. *See also* Superior Court No. 3827 EDA 2016.

The court entered an order on November 21, 2016, instructing Defendant Strafford's attorney to lodge a concise statement of matters complained of on appeal not later than twenty-one (21) days subsequent. *See* Order dated November 21, 2016. *See also* Pa.R.A.P. 1925(b).

6

The Defendant on December 5, 2016, filed a Petition for Extension of Time to File Statement of Matters Complained of on Appeal. *See* Petition for Extension of Time. By an order of that same date (December 5, 2016), this court granted the extension application providing Defendant Strafford's lawyer until January 3, 2017, to lodge his appellate complaints statement. *See* Order dated December 5, 2016.

On December 30, 2017, the Defendant's counsel filed a statement of matters complained advancing the four (4) error assignments discussed below. *See* Statement of Matters Complained.

## *II. Discussion*

### *The court erred in permitting the minor complainant to testify by contemporaneous alternative means (closed circuit video) since it was not established that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence would result in him suffering from serious emotional distress such that it would substantially impair his ability to reasonably communicate.*

Defendant Strafford via his first complaint on appeal maintains this court erred when allowing the minor complainant to testify through the use of an alternative means claiming the prosecution failed to " ... establish that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence would result in him suffering from serious emotional distress such that it would substantially impair his ability to reasonably communicate." *See* Statement of Matters Complained, No. 1. A review of the salient case record in combination with the relevant law reveals this assignment of error to be meritless.

The testimony by contemporaneous alternative method child witness statute is in material part as follows:

> **(a) Contemporaneous alternative method.**--Subject to subsection (a.1), in any prosecution ... involving a child victim ... , the court may order that the testimony of the child victim ... be taken under oath or affirmation in a room other than the courtroom and

7

transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim ... , including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim ... but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense.[25] Examination and cross-examination of the child victim ... shall proceed in the same manner as normally permitted.

**(a.1) Determination.**--Before the court orders the child victim ... to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim ... suffering serious emotional distress that would substantially impair the child victim's ... ability to reasonably communicate. In making this determination, the court may do all of the following:

> (2) Hear testimony of a parent or custodian ...

**(a.2) Counsel and confrontation.**--

> (2) If the court hears testimony under subsection (a.1)(2), the defendant, the attorney for the defendant and the attorney for the Commonwealth have the right to be present.

*See* 42 Pa.C.S. §5985(a)(a.1)(2)(a.2)(2).

"Based on these provisions, and in the absence of definitive statutory guidance to the contrary, [the Pennsylvania Supreme Court] conclude[d] that, in a Section 5985 hearing, as in other types of proceedings, the legislature intended that evidence is admissible at the discretion of the trial court." *Commonwealth v. Williams,* 624 Pa. 183, 196, 84 A.3d 680, 688 (2014).

The applicable review standard of a trial court's discretionary evidentiary ruling challenged on appeal is that below:

8

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. ....

> *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super. 2009) (quoting *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 550 (2002)). 'An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.' *Id.* at 1188–89 (citing *Commonwealth v. Carroll*, 936 A.2d 1148, 1152–53 (Pa.Super. 2007)).

*Commonwealth v. Antidormi*, 84 A.3d 736, 749-50 (Pa.Super. 2014).

"[A]s used in subsection 5985(a.1), 'serious emotional distress that would substantially impair the child victim's ... ability to reasonably communicate' refers to a state or characteristic that can be recognized and attested to by the child's parent or custodian ... . The plain purpose of subsection 5985(a.1) is to set forth the court's obligation to inform itself regarding the necessity to avoid serious emotional distress to the witness so that the witness is able to reasonably communicate." *Commonwealth v. Williams supra* 624 Pa. at 196, 84 A.3d at 688.

In *Commonwealth v. Torres-Kuilan*, the trial judge opted to delay until the time of trial ruling on the Commonwealth's motion seeking to permit the child complainant to testify via closed-circuit television. The juvenile at the start of the trial was called to testify, but " ... began crying and refused to enter the courtroom." *Commonwealth v. Torres-Kuilan*, 156 A.3d 1229, 1230 (Pa.Super. 2017). An *in camera* hearing then took place where the court heard testimony from the minor and a "witness coordinator," who detailed " ... how the child broke down emotionally and refused to enter the courtroom." *Id.* 156 A.3d at 1232. The court resultantly granted the prosecution's motion for the child complainant to testify by an alternative means. *Id.* 156 A.3d at 1233. The Superior Court found that the trial court did not abuse its discretion in

9

permitting the juvenile complainant to testify by an alternative means based on its observations and the testimony from the "witness coordinator." *Id.* 156 A.3d at 1232-33.

On March 24, 2015, an evidentiary proceeding took place before this court regarding the Commonwealth's pre-trial pleadings. N.T. 3/24/15. *See also* Petition to Admit Out-of-Court Statements Under the "Tender Years Hearsay Exception" and Motion to Allow a Child Witness to Testify Under the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act. At this hearing, the prosecutor presented as a witness relevant to its alternative testimonial appearance application the minor's mother, H.C.,[26] who described various and changed aspects of his behavior in the time period following the sexual abuse's reporting through this listing date (March 24, 2015). N.T. 3/24/15, pp. 54-72.

H.C. initially offered that subsequent to the disclosure of the sexual molestation the minor complainant began to urinate in his bed during the nighttime, frequently have nightmares, as well as climb into bed with his parents, all occurrences that pre-sexual abuse for the victim were unusual. N.T. 3/24/15, pp. 55-56.

In addition to these ongoing behavioral issues, H.C. recounted a specific instance where on their leaving the Pennsylvania State Police Media barracks the minor complainant believed he saw the Defendant's motor vehicle prompting him to become "very agitated" and have "a complete freak out." N.T. 3/24/15, pp. 56-57. H.C. advised her son (S.C.) thinks of Defendant Strafford as a "bad guy." N.T. 3/24/15, p. 56.

Responding to the prosecution's inquiry as to the complainant's demeanor when he is informed of his needed testimonial attendance at court, his mother (H.C.) explained that S.C. becomes uncomfortable and his behavior "moody." N.T. 3/24/15, p. 58.

10

Similarly, on the Commonwealth questioning H.C. about the minor complainant's response, if any, were he to have contact with the Defendant in a testimonial setting, she detailed that prior to the March 2015 hearing she informed her son that Defendant Strafford may be present at the scheduling which prompted S.C. to tell her that he did not want to see the Defendant and that "he would run out of the room." N.T. 3/24/15, pp. 69-70. The complainant's mother relatedly offered that if the minor saw Defendant Strafford he would hide his face, as well as most probably try to conceal himself under a table, common reactionary behaviors he exhibits when he gets upset, scarred, and/or embarrassed. N.T. 3/24/15, pp. 70-71.

Beyond her son's (S.C.) post-sexual abuse behavioral issues and his particular, adverse reactions to encountering Defendant Strafford both in and outside a courtroom, H.C. also described S.C.'s struggles in school which included the following: No longer doing his assigned work; Leaving his desk and walking away from the teacher; and Requiring a classroom "helper" to keep him focused on his schoolwork. N.T. 3/24/15, p. 58. S.C.'s mother added that before the disclosure he attempted his schoolwork, "his effort was there," but his academic situation following the sexual molestation's reporting had materially and for the worse changed. N.T. 3/24/15, p. 60. Sometime prior to the hearing (March 24, 2015) the minor complainant's school contacted H.C. notifying her that " ... he had to attend [an] extended school year because of his regression with his efforts." N.T. 3/24/15, p. 62.

This court throughout the entirety of her pre-trial hearing witness appearance (March 24, 2015) was most observant and attentive to that which the complainant's mother (H.C.) proffered salient to whether her son (S.C.) testifying at bar " ... in an open forum ... in the presence of the Defendant [would] result in the child victim ... suffering serious emotional distress that would

11

substantially impair ... [his] ... ability to reasonably communicate." 42 Pa.C.S. §5985(a.1). This court found such testimony of H.C. to be credible.

The complainant's mother (H.C.) described significant, continual and negative pattern, behavioral changes in her son both at home and school subsequent to the sexual abuse's disclosure. The post-sexual molestation onset of nighttime bed wetting, his regularly suffering from nightmares and the need to now join his parents during the night in their bed were collectively all certainly indicative that the minor complaint was subject to recurring, serious emotional trauma. The school based issues manifested after the sexual abuse's reporting included the ignoring of the authority figure teacher and an inability to focus on assigned tasks which taken together seriously called into question the complainant being able to appear in the strange environs of a courtroom, follow the presiding judge's directions and be sufficiently attentive to the lawyers' many questions so as to provide meaningful testimony. Moreover, these negative behavioral changes of S.C. not only began after the sexual abuse's disclosure, but were ongoing through the case's pendency, including the pre-trial proceeding (March 24, 2015) and adversely impacted per that which his mother (H.C.) detailed the two (2) primary facets of an eight (8) year old's life, family and school. N.T. 3/24/15, pp. 54-72.

In addition to these continuing patterns of negative, post-sexual abuse disclosure behaviors, the minor complainant's mother (H.C) also testified about specific instances of S.C.'s deleterious responses to even the suggestion of appearing in court to testify and/or otherwise having contact with Defendant Strafford. Believing he saw the Defendant in a passing automobile after having just left a meeting with the investigating state trooper, the complaint became "very agitated" and had a "complete freakout," reactionary behaviors certainly not conducive to an eight (8) year old reasonably communicating in a courtroom's very foreign

12

setting. N.T. 3/24/15, pp. 56-57. Likewise, when told he may encounter Defendant Strafford on coming to court, S.C. pointedly told his mother (H.C.) that "he would run out of the room." N.T. 3/24/15, pp. 69-70. *See Commonwealth v. Torres-Kuilan supra* 156 A.3d at 1230-33. As H.C. further amplified, the minor complainant on being subject to appreciable stress prompting fright and/or embarrassment responds by trying to hide his face or physically conceal himself otherwise. N.T. 3/24/15, pp. 70-71. Again, not behaviors favorable to a child of age eight (8) coming into the alien scene of a courtroom, sitting on the witness stand just some approximate three (3) or so feet from the jury box, in the presence of his alleged sexual abuser, then being the obvious focal point of the jurors – fourteen (14) strangers, the court, two (2) attorneys, as well as the Defendant, and yet being able to reasonably communicate.

It was from this totality of credible, material circumstances that the court concluded the minor complainant testifying at bar " ... in an open forum ... in the presence of the defendant [would] result in [S.C.] ... suffering serious emotional distress that would substantially impair ... [his] ... ability to reasonably communicate." 42 Pa.C.S. §5985(a.1).[27]

This court's decision allowing the minor complainant's testimonial appearances via an alternative means cannot be seen on the instant record as an "overriding or misapplication of the law, or the exercise of judgment that [was] manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality." *Commonwealth v. Antidormi supra* 84 A.3d at 749-50 *quoting Commonwealth v. Weakley supra* 972 A.2d at 1188-89 *citing Commonwealth v. Carroll supra* 936 A.2d at 1152-53. Rather, this court's findings and related conclusions as recounted above resulted from an impartial, considered process grounded on the credible and uncontradicted testimony of the minor's mother (H.C.) about her son's (S.C.) in person testimonial appearance causing him to suffer serious emotional distress materially and negatively impacting his ability

13

as such a witness to reasonably communicate. *See Commonwealth v. Williams supra* 624 Pa. at 196, 84 A.3d at 688 and *Commonwealth v. Torres-Kuilan supra* 156 A.3d at 1232-33. This court did not commit an abuse of its discretion in permitting S.C. to testify by alternative means, and the Defendant's error assignment otherwise is without merit.

*The court erred in admitting all of the out of court statements that the complainant allegedly supplied to his brother (K.C.) and mother (H.C.), as well as to Jodi Kaplan (including related audio recording and contemporaneous writings) since the time, content, and circumstances of those statements did not demonstrate sufficient indicia of reliability as required for the tender years exception.*

Defendant Strafford through his second error assignment attacks this court's admission of the oral averments made by the minor complainant to his adolescent brother, K.C., mother, H.C., as well as the recorded statements and relevant documents generated when S.C. met with Jodi Kaplan, the Child Advocacy Center forensic interviewer. In support of this appellate complaint, the Defendant summarily and baldly contends " ... the time, content, and circumstances of those statements did not demonstrate sufficient indicia of reliability as required for the tender years exception." *See* Statement of Matters Complained, No. 2.[28] This court on a review of the salient case record did not abuse its discretion in partially granting the Commonwealth's tender years hearsay petition and allowing the prosecution's introduction at bar of such evidence now challenged on appeal. This error assignment is meritless.

The statutory language controlling the admission of a child witness's hearsay statements is as relevant set forth below:

> **(a) General rule.**--An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. ... 31 (relating to sexual offenses), ... not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

14

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; ... .

42 Pa.C.S. §5985.1(a)(1)(2)(i).

"The 'admissibility of this type of hearsay is determined by assessing the particularized guarantees of trustworthiness surrounding the circumstances under which the statements were uttered to the person who is testifying.' " *Commonwealth v. Walter*, 625 Pa. 522, 538, 93 A.3d 443, 451 (2014) *quoting Commonwealth v. Delbridge*, 578 Pa. 641, 672-73, 855 A.2d 27, 45 (2003). "To determine whether a child's out-of-court statements are admissible under the TYHA, 'a trial court must assess the relevancy of the statements and their reliability in accordance with the test enunciated in *Idaho v. Wright*[, 497 U.S. 805, 110 S.Ct. 3139 (1990)]. Although the test is not exclusive, the most obvious factors to be considered include the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Id.* 625 Pa. at 538, 93 A.3d at 451 *quoting Commonwealth v. Delbridge supra* 578 Pa. at 675, 855 A.2d at 45. *See also Commonwealth v. Barnett*, 50 A.3d 176, 182-83 (Pa.Super. 2012) *quoting Commonwealth v. Kriner*, 915 A.2d 653, 657 Fn. 3 (Pa.Super. 2007).

A trial court's challenged decision to allow tender years hearsay evidence for purposes of appellate review is examined under the abuse of direction standard. *Commonwealth v. Curley*, 910 A.2d 692, 697 (Pa.Super. 2006) *citing Commonwealth v. Lukowich*, 875 A.2d 1169, 1172 (Pa.Super. 2005)("We will not reverse the trial court's decision to admit evidence pursuant to the tender years statute absent an abuse of discretion."). "An abuse of discretion is not merely an

15

error of judgment, but rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by evidence of record.' " *Commonwealth v. Antidormi supra* 84 A.3d at 749-50 *quoting Commonwealth v. Weakley supra* 972 A.2d at 1188 *citing Commonwealth v. Carroll supra* 936 A.2d at 1152–53.

At the joint hearing regarding the Commonwealth's pre-trial pleadings (March 24, 2015), the assistant district attorney related of-record that regardless of its petition's averments, the prosecution was seeking to have the court determine the admissibility of only the minor complainant's following out-of-court statements: Oral statement to the complainant's older brother, K.C., made on or about December 6, 2014; Oral statement to the complainant's mother, H.C., also made on or about December 6, 2014; Audio recorded statement of December 8, 2014, to forensic interviewer, Jodi Kaplan, along with certain writings generated during this recorded interview,[29] including but not limited to anatomically correct diagram(s);[30] and/or Audio recorded statement of December 16, 2014, to Pennsylvania State Trooper Jonathan Pipes.[31] N.T. 3/24/15, pp. 126-27.

In support of its petition, the prosecution at the resulting hearing (March 24, 2015) presented the testimony of the minor complainant's older brother, K.C., his mother, H.C., the forensic interviewer, Ms. Kaplan, and Trooper Pipes. N.T. 3/24/15, pp. 7-22, 22-54, 73-92, 93-108.

The court by its order dated April 13, 2015, found that the minor complainant's statements to his mother (H.C.) and brother (K.C.) were to be permitted, as well as the audio recorded statements to the forensic interviewer, Jodi Kaplan. The court via this same order (April 13, 2015) also directed the recorded statement to Trooper Pipes was not to be admitted.

16

*See* Order dated April 13, 2015. *See also* Commonwealth Exhibit CM-1 — Jodi Kaplan's Forensic Interview Report; CM-2 — Audio Recording of December 8, 2014, Forensic Interview; and CM-3 — Audio Recording of Trooper Pipes' December 16, 2014, Interview.

At the relevant hearing (March 24, 2015), the minor victim's older brother, K.C., age eleven (11), recounted the minor complainant's initial revealing to him of the Defendant's sexual abusive behavior. N.T. 3/24/15, pp. 7, 10.

On or about December 6, 2014,[32] the two (2) brothers were in their parents' bedroom playing and K.C. noticed that S.C. seemed to be hinting about something while mentioning the Defendant noticeably more than usual. N.T. 3/24/15, pp. 9, 10. During their horseplay, K.C.'s pants slipped lower revealing his "behind." N.T. 3/24/15, p. 15. Although yet somewhat hesitant, S.C. then blurted out that "Jay had touched his privates." N.T. 3/24/15, pp. 11-12, 16.

K.C. recounted that initially S.C. attempted to brush this disclosure off as joke, but K.C. told him " ... this is serious. You need to tell me the truth." N.T. 3/24/15, pp. 11-12. In response, the minor complainant began to apologize and advised that he was being serious. N.T. 3/24/15, p. 13. S.C. then related the sexual molestation was "going on before summer and all through summer" and included that "Jay has been ... touching my penis," as well as that "Jay" was "touching his butt." N.T. 3/24/15, pp. 13-14. The complainant further told his older brother (K.C.) these acts of sexual abuse occurred in the family home's "piano" room and in the basement. N.T. 3/24/15, p. 14.

The minor complainant's mother, H.C., as well appeared at this hearing (March 24, 2015) material to the statements he made to her on December 6, 2014. N.T. 3/24/15, p. 24.

H.C. stated that on a Sunday night in December 2014, K.C. approached her advising that S.C. needed to speak with her about a matter of significant importance. N.T. 3/24/15, p. 25.

17

Initially, the minor complainant "hesitated and kind of bit his lip and kind of shuffled his feet kind of like he didn't want to tell me something." N.T. 3/24/15, pp. 26-27.

With K.C.'s noting that he would not get in trouble, "[S.C.] went ahead and told [his mother, H.C.,] that Jay touched his penis." N.T. 3/24/15, p. 27. The minor complainant as well stated to her (H.C.) that "he put his hand down my pants." N.T. 3/24/15, p. 28. S.C. further disclosed to his mother (H.C.) that such " … had been happening since the summertime and that it happened more than once. And it happened as recently as that weekend." N.T. 3/24/15, p. 29. His mother (H.C.) also detailed the minor complainant told her that "Jay" touched his bottom, which he referred to as "butt cheek." N.T. 3/24/15, p. 33. H.C. as well asked where else "Jay" touched the minor complaint to which S.C. replied that the Defendant touched him with his mouth prompting the following exchange: "I said what part did his mouth touch and he said penis." N.T. 3/24/15, p. 34. When making these final disclosures, the mother (H.C.) testified S.C. was more hesitant and embarrassed. N.T. 3/24/15, p. 34.

After these allegations of sexual abuse were promptly was reported to the Pennsylvania State Police by H.C. that same evening, an interview of S.C was conducted by the Child Advocacy Center's forensic interviewer, Jodi Kaplan on December 8, 2014. N.T. 3/24/15, pp. 74-75, 77-78. *See* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview and Commonwealth Exhibit C-3(B) – Anatomical Diagram(s). Ms. Kaplan is the Program Director for the Delaware County Children's Advocacy Center. N.T. 3/24/15, p. 74. Ms. Kaplan regarding child forensic interviews had past been educated through two (2) nationally recognized training models. The methodology Ms. Kaplan practices is the National Children's Advocacy Center model that provides " … a coordinated response to allegations of childhood sexual abuse." N.T. 3/24/15, pp. 74-75. The participants are initially trained through

18

forty (40) hours of instruction. N.T. 3/24/15, p. 75. Beyond this original schooling, the center's staff, including Ms. Kaplan, is then required to annually undergo twenty (20) continuing education hours. N.T. 3/24/15, p. 75. In addition to these yearly classes, as such a forensic interviewer, Ms. Kaplan also " ... participate[s] in a peer review process four times a year as well as keep[s] up with research through journal club calls." N.T. 3/24/15, p. 75. Ms. Kaplan described that her goal in meeting with S.C. was to " ... provide a child focused, developmentally appropriate, non-leading investigative forensic interview of the child." N.T. 3/24/15, p. 75.

Ms. Kaplan explained that at the start of the discussion she " ... started off with narrative practice and [S.C.] was providing appropriate responses to his school activities and kind of social activities." N.T. 3/24/15, p. 80. As the interview progressed "[S.C.] spontaneously began talking about who he identified as Jay ... and he expressed being a little apprehensive about talking about the allegations." N.T. 3/24/15, p. 80. Ms. Kaplan clarified the identification of "Jay" stemmed from her discussions with S.C. about his "household constellation" which included " ... people staying in the home and one of the people he described as being in the home was Jay." N.T. 3/24/15, p. 85. After Ms. Kaplan provided S.C. with reassurance that he was in " ... a safe place to talk and that he could end the interview at anytime he felt that he wanted to ... he continued on with the interview ... ." N.T. 3/24/15, pp. 80-81. Ms. Kaplan during their discussions provided S.C. with " ... an anatomical diagram to talk about some of the abuse specific allegations ... ." N.T. 3/24/15, p. 81. *See also* Commonwealth Exhibit C-3(B) – Anatomical Diagram(s). Ms. Kaplan recalled that "[w]hen [S.C.] started talking about the abuse specific allegations he became a little more quiet." N.T. 3/24/15, p. 81. Eventually, S.C. did reach a point where he wanted to discontinue talking and the interview ceased, despite his

19

vocalizing " ... there were some things that he did not feel comfortable talking about." N.T. 3/24/15, p. 82.

The audio recording of Ms. Kaplan's forensic interview with the minor complainant included particularized disclosures about the complainant being sexually abused by Defendant Strafford. *See* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview. During this conversation (December 8, 2014), S.C. detailed that two (2) days earlier in the "piano" room the Stafford had assaulted him by placing his hand on S.C.'s thigh as well as touched the minor complainant's penis, prompting him to disclose the sexual abuse to his brother, K.C. As S.C. recounted to Ms. Kaplan, subsequent to him advising K.C. about the sexual molestation, his older brother (K.C.) urged the complainant to first tell the same to their mother. S.C. then revealed to Ms. Kaplan that Defendant Strafford touched his penis with his hands on more than one (1) occasion and the Defendant was lying about not committing such acts. The minor complainant recalled several times throughout the interview that the sexual molestation commenced before the summer when he was about six (6) or seven (7) years of age and occurred in the basement of the family home, as well as in the residence's "piano" room. One (1) of the incidents involved the Defendant in the basement pretending to sleep while S.C. was lying down next to him. Per this statement of S.C. to Ms. Kaplan, Defendant Strafford then proceeded to touch and grab both the minor's penis and "butt cheek." *See* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview.

The minor complainant as part of this this forensic interview (December 8, 2014), using an anatomical drawing of a prepubescent male circled on this diagram the area where he was touched by the Defendant, which he then verbally described that he had so noted the penis and buttocks. *See* Commonwealth Exhibit C-3(B) – Anatomical Diagram(s). While S.C. advised he

20

never touched Defendant Strafford's penis, he did observe it and described it as big and hairy. Similarly, the complainant as well detailed that he observed something emerge from Defendant Strafford's penis that looked like "spit." *See* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview.

This court by its material order (April 13, 2015) barred the Commonwealth from admitting S.C.'s audio recorded statement of December 16, 2014, to Trooper Pipes. *See* Order dated April 13, 2015, pp. 3-4. Despite the trooper's interview being certainly relevant to the criminal charges, this court found that the time, content and/or circumstances of the statement did not provide sufficient indicia of its reliability. 42 Pa.C.S. §5985.1(a)(1). *See* Order dated April 13, 2015, pp. 3-4. *See generally Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa.Super. 2005) *citing Commonwealth v. Hanawalt*, 419 Pa.Super. 411, 422, 615 A.2d 472, 438 (1992) and *Commonwealth v. Walter supra* 93 A.3d at 451 *citing Commonwealth v. Delbridge supra* 578 Pa.Super. at 674-75, 855 A.2d at 47.

A trial court's determination as to the admissibility of the statements under the tender years hearsay exception concerns the "relevancy" and "reliability" of the statements pursuant to the *Idaho v. Wright supra* test of " ... spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Commonwealth v. Walter supra* 93 A.3d at 451 *citing Commonwealth v. Delbridge supra* 578 Pa.Super. at 674-75, 855 A.2d at 47. *See also* 42 Pa.C.S. §5985.1(a)(1).

The original statements detailing his sexual victimization S.C. made to K.C. were spontaneous as K.C. testified the two (2) were playing in their parents' bedroom when the minor complainant unexpectedly disclosed to him, "Jay had touched his privates." N.T. 3/24/15, pp. 11-12, 16. Similarly, S.C.'s statements of sexual abuse disclosures to his mother, H.C., by

21

extension consisted of an impulsive nature as they were communicated only moments after this initial disclosure to K.C. N.T. 3/24/15, pp. 27-29, 33, 34.

While S.C.'s disclosures to Ms. Kaplan were not unsolicited or impromptu like those revealed to his brother (K.C.) and mother (H.C.), they were made during the course of S.C.'s forensic interview. Ms. Kaplan conducted the discussion in a neutral manner based on her salient professional experience and training. N.T. 3/24/15, pp. 74-75. Through her role as the case's forensic interviewer, Ms. Kaplan conducted a " ... focused, developmentally appropriate, non-leading investigative forensic interview of the child." N.T. 3/24/15, p. 75. *See also* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview.

In addition to being respectively unprompted and/or resulting from a nonsuggestive forensic interview, S.C.'s statements were also repetitive and consistent as disclosed to K.C., H.C., and Ms. Kaplan. The victim communicated to these three (3) persons that Defendant Strafford had touched his penis, as well as buttocks, and even depicted on the prepubescent anatomical drawing these same areas for Ms. Kaplan. N.T. 3/24/15, pp. 13-14, 27-28. *See also* Commonwealth Exhibit C3(B) – Anatomical Diagram(s). The minor complainant not only explained to K.C., H.C., and Ms. Kaplan the multiple acts of sexual assault had commenced prior to the summer, but communicated to each K.C. and Ms. Kaplan that the sexual abuse took place in both the family home's "piano" room, as well as the basement. N.T. 3/24/15, pp. 13-14, 29. *See also* Commonwealth Exhibit CM-2 – Audio Recording of December 8, 2014, Forensic Interview.

Beyond the spontaneous and consistent nature of S.C.'s statements to his brother, K.C., his mother, H.C., and Ms. Kaplan, the record at bar is notably devoid of any suggestion that S.C. had any motive to fabricate his continued accounts to these individuals regarding Defendant

22

Strafford's ongoing sexual molestations. N.T. 3/24/15; N.T. 8/1/16; N.T. 8/2/16; and N.T. 8/3/16.

The evidence this court allowed through the partial granting of the prosecution's tender years petition was as detailed above and in its April 13, 2015, order the result of a discerning, deliberative process and not a summarily embracing of all that which the Commonwealth sought to introduce. *See* Order dated April 13, 2015. *See also* N.T. 3/24/15, pp. 120-21, 126-27.

Simply because this court in the exercise of its discretion did not reject the sum of the prosecution's child hearsay statements' proffer does not equate to the evidence it did so admit lacking the requisite, sufficient indicia of reliability. *Commonwealth v. Walter supra* 625 Pa. at 538, 93 A.3d at 451. *See also* 42 Pa.C.S. §5985.1(a)(1)(2)(i). This court's decision was not the result of "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality," and this error assignment thus is meritless. *Commonwealth v. Antidormi supra* 84 A.3d at 749-50.

*The court erred in permitting the prosecutor and police officer witness to refer to the complainant as the victim throughout the course of trial. Use of the word "victim" was unduly prejudicial, compromised the fact-finding function of the jury, and served to undermine the presumption of innocence.*

Defendant Strafford by his third appellate complaint argues that this court erred in permitting the Commonwealth and the state police witness, Trooper Pipes, to refer to the minor complainant, S.C., as "victim" throughout the trial. More specifically, the Defendant maintains the "[u]se of the word 'victim' was unduly prejudicial, compromised the fact-finding function of the jury, and served to undermine the presumption of innocence." *See* Statement of Matters Complained, No. 3. This error assignment is devoid of merit.

Via defense counsel's pretrial *in limine* motion, he sought to preclude the attorneys, all witnesses and the court during the trial from referring to the minor complainant as a "victim."

23

*See* Pretrial Motion In Limine [*sic*] – Count 4 – Subcounts I, II. When these *in limine* applications were addressed at the of-record robing room conference (July 29, 2016), the Defendant's attorney advanced in support of these requested prohibitions not a single direct or even tangential Pennsylvania appellate decision and/or other legal authority otherwise, but rather proffered nothing more than the speculative belief that should S.C. at trial be verbally identified as a "victim," the jury for unspecified reasons would be unable to properly discharge its factfinding responsibility and/or not honor the accused's presumption of innocence. N.T. 7/29/16, pp. 15-16. The court after entertaining the respective arguments of the lawyers denied these defense *in limine* requests. N.T. 7/29/16, pp. 15-18. *See also* Order dated July 29, 2016.

It is well-settled that "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions." *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196 *citing Commonwealth v. LaCava supra* 542 Pa. at 182, 666 A.2d at 231; *Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 971 *citing Commonwealth v. Travers supra citing Commonwealth v. Travaglia supra*; *Commonwealth v. Spotz supra* 587 Pa. at 57, 896 A.2d at 1224 *quoting Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 871 and *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196. The trial record does not contain even a modicum of evidence that the jury disregarded this court's repeated direction literally starting with the jurors' selection that Defendant Strafford was presumed innocent unless or until the prosecution proved beyond a reasonable doubt his guilt. Likewise, there is just no evidence on the instant record to suggest the jury did not follow the court's directions about how it was to fairly and impartially discharge its factfinding function.

The court during jury selection, *inter alia*, advised the venire panel of the following:

> Under the law of Pennsylvania, ladies and gentlemen, every accused is presumed innocent. The burden is solely on the

24

Commonwealth to prove an accused guilty beyond a reasonable doubt. As I said, anyone accused of a crime, ladies and gentlemen, is presumed innocent, and that presumption of innocence remains unless or until the Commonwealth convinces the jury unanimously beyond a reasonable doubt that one is guilty of some or all of the crimes charged. The mere fact an individual has been arrested and charged by the police with a crime or crimes is not evidence of guilt and cannot be considered by the jury as such. Ladies and gentlemen, in this and all other criminal jury trials, the jury's core responsibility is that of the case's ultimate fact finder. The jury will listen to all witnesses presented and examine every admitted evidentiary exhibit, free to believe all, some or none of any witness's testimony and free as well to disregard in whole or part any admitted exhibit of evidence. The jury will consider and weigh the presented testimony as well as the trial's other evidence and determine the matter's true facts. The jury's key fact-finding function is exclusive. You the jury will solely determine this case's credible facts, not I and/or the lawyers. For those of who [*sic*] selected to serve as jurors, I'll provide before the commencement of the trial's evidentiary presentation more specific guidance as to how one goes about fairly and justly discharging the jury's fact finding function. Stripped of its legalistic and eloquent verbiage, ladies and gentlemen, this can be succinctly summarized for our purposes now as one, careful attentiveness, and two, coupling that attentiveness with the exercise of your everyday life experiences, and three, your good common sense. While you and you alone, ladies and gentlemen, as the jury will be the exclusive arbiters of the case's credible facts, I as the presiding judge do obviously have certain responsibilities. Although the jury is the sole judge of fact, I am the exclusive judge of the case's law. The jury must accept and follow all my legal rulings and instructions. No juror may apply any law he or she knows or thinks he or she knows. The only law a juror may consider and apply in this case is that which I will direct or instruct.

Ladies and gentlemen, a phrase I have used and will continue to use throughout the selection process is that of a 'fair and impartial juror.' *A fair and impartial juror is one who will conduct his or her own deliberations and base his or her own verdict solely on the evidence and testimony presented throughout this trial and in strict accordance with my binding instructions of the law given by me to the jury throughout the trial and at its conclusion. Ladies and gentlemen, a fair and impartial juror does not allow any outside influences be it bias, prejudice, or sympathy to affect*

25

*his or her deliberations and ultimately his or her eventual verdict.*

Ladies and gentlemen, as I mentioned previously, while you as the jury will be the case's exclusive arbiters of the facts, I will be the sole judge of the matters of law, and as such, you must accept and follow only my legal rulings and instructions on the law. These principles of law applicable to criminal trials which a jury must accept and follow are sometimes referred to as binding instructions in the law. I'll now review with you certain of these binding legal principles and inquire after each whether anyone would have difficulty or simply be unable to follow the same? [*sic*] Ladies and gentlemen, is there anyone among you who would refuse to accept this binding instruction of the law, that Mr. Strafford is presumed innocent of the charges, and it is only the Commonwealth's burden to prove his guilt of the crimes charged beyond a reasonable doubt? If you can't follow this binding principle of law, please stand. No one is standing. Ladies and gentlemen, is there anyone among you would [*sic*] who refuse the [*sic*] accept the binding instruction of law that the Commonwealth has the only burden of proof in this case and that Mr. Strafford being presumed innocent has no obligation to present evidence and/or otherwise establish his innocence; it's a given? If you cannot follow this binding instruction of law, please stand. No one is standing. ... Is there anyone among you, ladies and gentlemen, who would refuse to accept the binding instruction of law that the mere fact that Mr. Strafford has been arrested and charged by the Commonwealth of these alleged crimes is not evidence of his guilt and cannot be considered by the jury as evidence of guilt? If you cannot follow this binding instruction of law, please stand. No one is standing.

N.T. 8/1/16, pp. 6-8, 11-12, 16-17, 18. (Emphasis added).

Once the jury was empaneled and sworn, *inter alia*, this court directed during its precharge that below:

However, you have to be most mindful. Mr. Strafford has no obligation to prove to you his innocence. He's presumed innocent, and that presumption of innocence remains unless or until the Commonwealth presents to you evidence that convinces you collectively beyond a reasonable doubt he's guilty of all or some of the crimes charged. ... Also, as I told you during your selection, Mr. Strafford being arrested and charges [*sic*] with these crimes, that's proof of nothing. His mere arrest and these allegations

26

aren't evidence of guilt and you're not to consider it as evidence of guilt. Again, Mr. Strafford, he's presumed innocent. He doesn't have to prove that since the burden in this criminal trial like any other criminal matter rests solely on the Commonwealth of Pennsylvania to establish guilt beyond a reasonable doubt.

Attentiveness, common sense, and your everyday life experience, they're the common denominators to being a fair, impartial and just fact finder. Each of you ladies and gentlemen, must keep an open mind throughout the entirety of the trial. How can you make an informed decision based on behalf [*sic*] of the information? You can't. Do not form opinions about any disputed matter in this case, whether it's guilt or innocence or anything else, until you begin your deliberations. You will then be armed with everything you need to make a fair, informed and just decision. You will have heard all the evidence, you have heard the closing arguments of the attorneys, and you will have heard my final instructions on the law. Absent any one of those three things, any decision you make, even if it's a preliminary formation of an opinion, it's ill advised, it's ill informed, and it's speculation. Speculation, not surprisingly, has no place in a criminal courtroom. You're not to discuss the case amongst yourselves or with anyone else until have [*sic*] directed you to begin your deliberations. Again, and similarly, how can you have a meaningful and fair discussion about the case based on a quarter, a third, a half or even 75 percent of the evidence? You can't. [E]ven if you've heard all the evidence, if you haven't heard the closing arguments of the attorneys and you haven't heard my final instructions of the law, these discussions are premature. They're not to occur because they are ill advised, they are ill informed, and again, we're getting back to impermissible speculation. You need those three factors, ladies and gentlemen - - all the evidence, the closing arguments and my final legal instruction – before your deliberations can be what they must: informed, fair and just.

N.T. 8/1/16, pp. 77-78, 83-84.

After the close of the trial and just prior to counsel's summations, *inter alia*, this court

provided in its final instructions to the jury the following direction:

Ladies and gentlemen, now that you have heard all the evidence that's to be presented for purposes of this trial, the next step is for the attorneys to give to you their respective closing arguments. Even though these arguments do not constitute evidence, you should obviously careful [*sic*] and attentive thought. In their

27

respective arguments, ladies and gentlemen, inevitably counsel will call your attention to evidence they each consider material and you to draw certain inferences from that evidence. Be mindful, you're not bound by any recollection of the evidence the attorney may reference. It is your memory of the evidence and your recollection of the evidence alone that must control and guide your deliberations. If there is a discrepancy between counsel's recollection of the evidence and your memory of that same evidence, you're bound by your recollection of the evidence, not what counsel may reference to the contrary. Moreover, you're not limited in your consideration of the evidence to that just which is mentioned by the attorneys in their closing arguments. You have an obligation to consider the totality of the trial's evidentiary presentation. All this being said, to the extent the inferences which the attorneys may ask you to draw are supported by evidence you find credible and appeal to your sense of reason and judgment, you must certainly may consider and accept such during your deliberations.

*Starting with your selection, ladies and gentlemen, and throughout the trial, I've reiterated to you it is a fundamental principle of our criminal justice system that you must presume Mr. Strafford is innocent. This meant and means you were to accept that the mere fact he is charged with these crimes does not mean he is guilty of any such allegations.* The mere fact he's been arrested is not evidence of guilt and cannot be considered by you as evidence of guilt. Mr. Strafford, ladies and gentlemen, has begun this case with a clean slate. He has no obligation to prove to you his innocence. He is presumed innocent, ladies and gentlemen. Mr. Strafford is presumed innocent as the trial began and progressed, and it's the Commonwealth alone who bears the burden of convincing you he is guilty of all or some of the crimes charged.

*Your verdict must arise from your conscientious review of the trial's facts, the following of the law which I instruct, the application of your everyday life experiences, and your good common sense as well as the recognition of the importance of the oaths you took as jurors to try this case fairly and impartially.*

As I told you in introducing the summations of counsel, their arguments, their statements, they're not part of the evidence and you shouldn't consider them as such. However, in deciding the case you should carefully consider the evidence in light of the various reasons and arguments each lawyer presented. It's the right of each lawyer to discuss the case in a manner that is more

28

favorable to the side he represents. You certainly may be guided by an attorney's arguments to the extent it's supported it's supported [*sic*] by the evidence you find credible and insofar as it aids you in applying your own reason and common sense. Such being said, you're not required to accept the arguments of either lawyer. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand in this courtroom throughout the course of trial and in accordance with these legal instructions I'm now providing.

*It is your responsibility as jurors to perform your duties and reach a verdict based on the evidence as it was presented during the trial and only the evidence as presented during trial.* However, in deciding the case's credible fact, you may properly apply your common sense and certainly draw upon your own everyday practical life experiences. *Your deliberations must be kept free of bias or prejudice of any kind. Both the Commonwealth of Pennsylvania and Mr. Strafford have a right to expect you to consider the evidence conscientiously and to apply the law as I have outlined it to you.*

N.T. 8/3/16, pp. 43-44, 90-91, 92, 105-06, 112. (Emphasis added). *See also* Pa. SSJI (Crim) 7.01 and 7.03.

Certainly, those persons selected to serve as jurors in light of the court's material instructions readily appreciate that a criminal jury is an adversarial proceeding with both the Commonwealth and defense understandably trying to advance their respective causes while also seeking to call into question that which the other contends. This confrontational process by its inherent nature posits in most instances an individual accused of subjecting another to criminality. Plain common sense dictates that the prosecution believes its "victim" suffered at the hands of the Defendant otherwise there would be no trial. Simply because the prosecution and its police witness may refer to the person it alleges was victimized as a "victim" is just an expected part of the trial and not the wholesale subversion of the criminal jury trial system Defendant Strafford baldly hypothesizes.

29

Defendant Strafford at the pretrial conference proffered no supportive Pennsylvania legal authorities for his proposition now advanced on appeal that the mere uttering at trial by the prosecutor and/or some Commonwealth witness of the term, "victim," " ... compromised the fact-finding function of the jury, and served to undermine the presumption of innocence." *See* Statement of Matters Complained, No. 3. *See also* N.T. 7/29/16, pp. 15-18. . This court subsequent has yet to uncover the same and neither has the Defendant's current counsel brought to its attention a single such Commonwealth statute nor even one (1) applicable Superior Court and/or Supreme Court of Pennsylvania decision. *See* Statement of Matters Complained, No. 3.

To overcome the presupposition that the jury did in fact adhere to this court's above-cited instructions salient to his being presumed innocent, as well as the jurors fairly and impartially discharging their factfinding function, the Defendant seemingly once more relies on nothing more than his speculative belief that the term "victim" had a talismanic impact on the jury causing the jurors to collectively violate their oaths and summarily ignore the court's oft repeated legal directions patently to the contrary. *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196 *citing Commonwealth v. LaCava supra* 542 Pa. at 182, 666 A.2d at 231; *Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 971 *citing Commonwealth v. Travers supra citing Commonwealth v. Travaglia supra*; *Commonwealth v. Spotz supra* 587 Pa. at 57, 896 A.2d at 1224 *quoting Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 871 and *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196. This assignment of error is meritless.

30

*The evidence is insufficient to sustain the convictions for involuntary deviate sexual intercourse, indecent assault, and corruption of minors since Mr. Strafford was not identified as the offender beyond a reasonable doubt, especially where the complainant was not asked to identify Mr. Strafford, did not reference his last name, and where no stipulation to identity was presented to the jury.*

Defendant Strafford through his final appellate complaint maintains the trial evidence was insufficient to establish as a matter of law he was the person who sexually abused S.C. and his convictions at bar are thus legally infirm. The Defendant in support of the same advances that the minor complainant " ... was not asked to identify Mr. Strafford, did not reference his last name, and where no stipulation to identity was presented to the jury." *See* Statement of Matters Complained, No. 4. This final appellate complaint is without merit as a review of the full trial record under the well-settled standard governing such claims reveals Defendant Strafford's challenged convictions to rest on legally sufficient evidence.[33]

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences determine whether a sensible jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007) and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000

31

(Pa.Super. 2003) *quoting Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied,* 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ' … preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt.' " *Commonwealth v. Hansley. supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549, *appeal denied,* 575 Pa. 691, 835 A.2d 709. Although a conviction must be based on " … more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis,* 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon,* 695 A.2d 794, 797 (Pa.Super. 1997). " … [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These long-established principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Kriegler,* 127 A.3d 840, 847 (Pa.Super. 2015) *quoting Commonwealth v. Hartie,* 894 A.2d 800, 803-04 (Pa.Super. 2006) *quoting Commonwealth v. Thomas,* 867 A.2d 594, 597 (Pa.Super. 2005). *See also Commonwealth v. Cox,* 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered " '[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence.' " *Commonwealth v.*

32

*Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the finder of fact is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness. Pa. SSJI (Crim) 2.04. Regarding the offered testimony and other trial evidence, the fact finders in making such decisions may choose what they value and discount what they find unpersuasive.

In the similar case of *Commonwealth v. Brooks*, the Superior Court found that "[b]ecause the victims testified via closed-circuit television, in-court identification of Appellant was impossible." *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa.Super. 2010). The appellate court relatedly opined material to current considerations that " ... the victims' testimony, coupled with [the CYS worker's] in-court identification, was sufficient to establish that Appellant was the perpetrator of the sexual abuse." *Id.*

The facts summarized *infra* were credibly established at Defendant Strafford's trial.

S.C. at the time of trial was nine (9) years old. N.T. 8/2/16, p. 5. The minor complainant detailed that his older cousin, who resided at the house, would occasionally have friends stay at the home for extended time periods. N.T. 8/2/16, pp. 10-11. When asked by the Commonwealth as to the name of any young men who would so visit the house, S.C. responded that an individual named "Jay" would frequently stay overnight at the house. N.T. 8/2/16, p. 11.

The minor complainant detailed that the sexual molestation by "Jay" took place from when he started second grade to the summer following second grade. N.T. 8/2/16, p. 14. S.C. and "Jay" during the abusive incidents were in the basement of the residence alone. N.T. 8/2/16, pp. 15, 17, 18, 20.

The minor complainant detailed that he not only saw "Jay's" penis, but that he was touched by it. N.T. 8/2/16, p. 16. In addition to seeing "Jay's" penis, S.C. as well stated that he also saw " ... yellow stuff when you go to the bathroom, and like white stuff" come out of "Jay's" penis. N.T. 8/2/16, p. 17.

In addition to observing and being touched by "Jay's" penis, S.C. explained that on numerous occasions he was touched on his penis over his clothing by "Jay's" hand. N.T. 8/2/16, p. 17. On the Commonwealth inquiring as to what other part of "Jay's" body touched him, the minor complainant replied, "his mouth." N.T. 8/2/16, pp. 18-19, 20, 22. Per defense counsel's questioning, the description of this act was as follows:

Mr. Pacillio:

> ... [D]o you remember telling me once that you said Jay had his mouth on your penis for about 20 seconds? Is that true?

S.C.:

> Yes.

Mr. Pacillio:

> And did you tell me once that *Jay* was chewing on your penis during that time? He chewed on it like it was a piece of candy?

S.C.:

> Yeah. ...

Mr. Pacillio:

> And then do you remember telling me there was little bite marks on your penis because *Jay* was chewing on it, right?

34

S.C.:

Yeah.

N.T. 8/2/16, p. 27. (Emphasis added).

Prior to the conclusion of his testimony, when the prosecutor asked S.C. about to why he did not disclose sooner the sexual abuse, the below exchange took place:

Mr. Grace:

Why didn't you tell anyone right away?

S.C.:

Because I was scared.

Mr. Grace:

What were you scared about?

S.C.:

And weirded out. *Of Jay.*

Mr. Grace:

And you said you were weirded out. Is that what you said?

S.C.:

Yeah.

Mr. Grace:

What do you mean by that?

S.C.:

Like I was weirded out by everything what he did.

N.T. 8/2/16, pp. 20-21. (Emphasis added.)

35

The minor complainant's older brother, K.C., also testified at trial. N.T. 8/2/16, p. 37. K.C. recounted that his cousin Drew would routinely have a friend stay over the house named "Jay Strafford." N.T. 8/2/16, p. 39. During his testimony, S.C.'s brother (K.C) made such an in-court identification of Defendant Strafford. N.T. 8/2/16, p. 39. K.C. as well recalled how one (1) night he and S.C. were playing football when his younger sibling said to him, "Jay has been touching my privates." N.T. 8/2/16, p. 41.

The victim's mother, H.C., also at trial testified. N.T. 8/2/16, p. 62. H.C. explained her younger son, the minor complaint, is nine (9) years old. N.T. 8/2/16, p. 62. On being asked by the prosecution, H.C. advised she knew an individual by the name of James Strafford and made an in-court identification of the Defendant as this person. N.T. 8/2/16, p. 62. The complainant's mother offered that Defendant Strafford was friends with her nephew, S.C.'s cousin. N.T. 8/2/16, pp. 10-11, 63. H.C. described how in approximately 2011/2012, the Defendant came to live at her family's home. N.T. 8/2/16, pp. 63-64. Defendant Strafford then resided full time at the house and on his completion of high school, in 2012-2013, he stayed there less frequently as he spent time at his grandmother's home. N.T. 8/2/16, pp. 64-65. However, even when living at his grandmother's residence he would still be at the family's house most days of a week, ranging from visits to overnight stays. N.T. 8/2/16, p. 65.

Eventually, S.C. and his brother, K.C., approached H.C. and the minor complainant " ... told [her] that Jay had been touching his penis" and "Jay had touched his bottom ... with his hand and that he had seen ... Jay's penis." N.T. 8/2/16, pp. 70, 73. At the time S.C. disclosed to his mother the sexual abuse, the Defendant was in the residence. N.T. 8/2/16, pp. 71, 74. H.C. then confronted the Defendant by informing that "[S.C.] told me that you've been touching him." N.T. 8/2/16, p. 87.

36

Defendant Strafford via this appellate complaint argues by limiting his review of the trial record to only the testimony of the minor complainant that as a matter of law it was not proven he sexually molested S.C. Based on the totality of the above-detailed testimony of the minor complainant, his older brother (K.C.) and mother (H.C.), as well as accepting such evidence in a light most favorable to the Commonwealth and the reasoned inferences flowing from the same, the Defendant's sufficiency challenge is just without merit.

At trial, the defense presented four (4) witnesses on behalf of Defendant Strafford as follows: Eleanor Martone, the Defendant's grandmother; Drew Chamberlain, Defendant Strafford's friend and cousin of S.C.; Linda Dorrell, the mother of a friend of the Defendant's; and Laura Zimmer, Defendant Strafford's girlfriend. N.T. 8/2/16, pp. 127-36. N.T. 8/3/16, pp. 3-25, 28. Throughout the questioning of these individuals by defense counsel, he not only referred to the Defendant as "Jay" or "Jay Strafford," but when two (2) of the witnesses mentioned the Defendant by name they each stated, "Jay." N.T. 8/2/16, pp. 127, 128, 131, 132. N.T. 8/3/16, pp. 4, 7, 8, 10, 11, 12, 13, 14, 18, 19, 22, 23, 28.

Similar to *Commonwealth v. Brooks*, the minor complainant was unable to identify the Defendant as S.C. appeared as a trial witness through the closed circuit television. *Commonwealth v. Brooks supra* 7 A.3d at 857. However, S.C. throughout his testimony was unwavering in his statements that the person named "Jay," a friend of his older cousin would frequently reside at their home and this individual sexually molested him. N.T. 8/2/16, pp. 11, 14, 15, 16, 17, 18, 20, 21. S.C. continuously referred to his sexual abuser by name, "Jay." N.T. 8/2/16, pp. 14-20. The minor complainant did not state any other name or person other than "Jay" as his assailant.

37

At trial, S.C.'s brother (K.C.) and mother (H.C.) both made unquestioned in-court identifications of the Defendant. N.T. 8/2/16, pp. 39, 62. The sibling as well recounted the complainant first telling him about the attacks, specifically that "Jay has been touching my privates." N.T. 8/2/16, p. 41. H.C. also explained the time period and reasons behind the Defendant residing at the family's residence and his friendship with her nephew. N.T. 8/2/16, pp. 63-65. Throughout their testimony, H.C. and victim's brother, K.C., like the minor complainant, both continuously referred to Defendant Strafford by "Jay," as did two (2) the defense witnesses. N.T. 8/2/16, pp. 37-60, 62-94, 128. N.T. 8/3/16, pp. 8, 14

K.C. and the minor's mother, H.C., each identified Defendant Strafford at trial as the individual who lived in their home and was known to them as "Jay." N.T. 8/2/16, pp. 39, 63-64, 65. In addition to these acknowledgments by the Commonwealth witnesses, two (2) defense witnesses, Eleanor Martone and Drew Chamberlain, as well identified Defendant Strafford at trial. N.T. 8/2/16, p. 127. N.T. 8/3/16, p. 4.

It is patently evident that despite S.C. not identifying the Defendant during his closed circuit television testimony, his descriptions of the sexual abuser as an individual named "Jay," a friend of his older cousin, who resided at the family home, coupled with his older brother's (K.C.) and mother's (H.C.) testimonial appearances, as well as their and two (2) defense witnesses' respective in-court identifications of the Defendant as "Jay" was as a matter of law sufficient to identify the Defendant as the offender. *Commonwealth v. Brooks supra* 7 A.3d at 857. N.T. 8/2/16, pp. 14-21, 39, 41, 62-65, 70, 73, 87, 127. N.T. 8/3/16, p. 4.

Based on the foregoing trial evidence, when viewed in the light most favorable to the prosecution together with the rational inferences such reasonably allows, there was at trial legally sufficient evidence establishing Defendant Strafford was the sexual molester of S.C. and the

38

Defendant's convictions are as a matter of law sound. *See generally Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartie supra* 894 A.2d at 903-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597. The trial record most certainly contains more than sufficient evidence to support the jury's finding that Defendant Strafford was the perpetrator of these crimes.

The jury as the " ... sole judge[] of the credibility and weight of all testimony" was "free to believe all, part or none of the evidence." Pa. SSJI (Crim) 2.04. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77.

In reviewing Defendant Strafford's sufficiency challenge to his involuntary deviate sexual intercourse,[34] indecent assault,[35] and corruption of minors convictions,[36] the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. If the court finds " ... the record contains support for the convictions," the decision must remain as the jury concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213.

### III. Conclusion

For all the above reasons, Defendant Strafford's convictions and judgment of sentence should be affirmed.

BY THE COURT:

_____
**Kevin F. Kelly**                    J.

DELAWARE CO. PA
JUDICIAL SUPPORT
OFFICE OF

2011 JUN 26 PH 2: 28

FILED

39

[1] *See Commonwealth v. Strafford*, No. MD 2950-14. *See also* Footnote 6.

[2] 18 Pa.C.S. §3126.
[3] 18 Pa.C.S. §6301.

[4] The Commonwealth through this petition sought to have the court permit the introduction at bar of certain verbal and nonverbal hearsay statements of the eight (8) year old, minor complainant (hereinafter described as "S.C.," "complainant," and/or "minor complainant"). *See* Petition to Admit Out-of-Court Statements Under the "Tender Years Hearsay Exception." *See generally* 42 Pa.C.S. §5988.

[5] Through this motion the prosecution requested the court allow the testimonial appearance of the eight (8) year old complainant via the contemporaneous, alternative method of close circuit television. *See* Motion to Allow a Child Witness to Testify Under the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act. *See generally* 42 Pa.C.S. §5985.

[6] As the Commonwealth lodged the two (2) pleadings prior to this matter being before the trial court, the relevant filings and the resultant hearing (March 24, 2015) proceeded under a miscellaneous docket, No. MD 2950-14. *See Commonwealth v. Strafford*, No. MD 2950-14.

[7] Immediately prior to the evidentiary proceedings' conclusion (March 24, 2015), defense counsel requested and was allowed leave to submit written argument in support of denying the prosecution's tender years hearsay petition. N.T. 3/24/15, pp. 121-22. *See generally* 42 Pa.C.S. §5985.1. On April 10, 2015, the court received from the Defendant's attorney this legal memorandum opposing the Commonwealth's petition to admit certain statements under the tender years hearsay exception. *See* Defendant's Brief dated April 10, 2015. *See also* Order dated April 13, 2015.

[8] 18 Pa.C.S. §3123.
[9] 18 Pa.C.S. §3126(a)(7).
[10] 18 Pa.C.S. §6301(a)(1)(ii).
[11] 18 Pa.C.S. §3123(a)(7).

[12] The court in separate orders also dated February 8, 2016, directed a full copy of the unredacted documents previously forwarded to it by Children and Youth Services of Delaware County, as well as a complete copy of those same materials with the redactions resulting from its *in camera* review, were both to be made part of the case record under seal. *See* Orders dated February 8, 2016.

[13] 18 Pa.C.S. §3123(b).
[14] *See generally* 42 Pa.C.S. §5988.
[15] 18 Pa.C.S. §3126(a)(7).
[16] 18 Pa.C.S. §6301(a)(1)(ii).
[17] 18 Pa.C.S. §3123(b).

[18] 42 Pa.C.S. §9799.24. *See also Commonwealth v. Whanger*, 30 A.3d 1212, 1214 (Pa.Super. 2011) and *Commonwealth v. Schrader*, 141 A.3d 558, 561 (Pa.Super. 2016) *citing Commonwealth v. Whanger supra* 30 A.3d at 1214.

[19] 18 Pa.C.S. §3123(b).
[20] 18 Pa.C.S. §3126(a)(7).
[21] 18 Pa.C.S. §3123(b).
[22] 18 Pa.C.S. §6301(a)(1)(ii).
[23] 18 Pa.C.S. §3126(a)(7).
[24] 61 Pa.C.S. §§4501 *et seq.*

[25] In lieu of that which this salient statute provides otherwise, defense counsel for trial purposes understandably did not want him and Defendant Strafford physically separate when the minor complainant testified, even with the

40

required adequate means to communicate arranged between he and his client. (*E.g.* The court, prosecutor and Defendant's attorney all in the complainant's immediate company during his testimony examination while Defendant Strafford remained in the courtroom with the jury alone.) *See* Pretrial Motion In Limine [*sic*] – Count 2. *See also* 42 Pa.C.S. §5985(a). Hence, the Commonwealth and defense reached an agreement though which the live video feed of the S.C.'s testifying at trial would show both he and the victim advocate allowing for the court, assistant district attorney, Defendant Strafford and his lawyer to collectively stay in the courtroom and the jury's direct presence. *See* Order dated July 29, 2016. *See also* N.T. 7/29/16, pp. 5-19.

[26] In an effort to guard against the public disclosure of the minor complainant's identity, the court given the familial relationships has throughout this opinion substituted in lieu of referencing his brother's and mother's names their respective initials as applicable. *See generally* 42 Pa.C.S. §5988.

[27] This court being mindful of the out of the norm manner in which S.C. was testifying repeatedly from literally the trial's outset provided the jurors with cautionary instructions. These directives reiterated to the jurors that they were to not in any manner evaluate this testimony differently than that of any other trial witness.

Starting with the general *voir dire* of the venire panel this court instructed as follows:

> Ladies and gentlemen, witnesses presenting testimony during a trial are normally required to appear before you in person to offer their testimony. The laws of Pennsylvania, however, permit the testimony of young children to be taken in a setting other than the courtroom and presented to you through electronic means. It is anticipated that [S.C.] will testify at trial via a live closed-circuit or video conferencing system. [S.C.'s] testimony, ladies and gentlemen, is entitled to no more or less weight than that of any other witness because of it being electronically offered to you. Rather, his testimony is to be evaluated by you in the same way in which you will evaluate the testimony of all other witnesses in this case. Is there anyone among, you, ladies and gentlemen, who would or could not, rather, accept this binding instruction of law? If so, please stand. No one is standing.

N.T. 8/1/16, pp. 18-19.

Immediately prior to the testimony of the S.C., the court again provided the cautionary directive below:

> Ladies and gentlemen, as you see, and as I told you yesterday, witnesses appearing for purposes of trial are normally required to do so in person from the witness [stand]. As I relatedly instructed yesterday, the law of Pennsylvania does permit a young child to offer testimony through electronic means. Obviously that's what we're doing imminently. As I also told you yesterday, [S.C.'s] testimony is to be evaluated by you in the same way in which you would evaluate the testimony of all other witnesses you may hear in this case.

N.T. 8/2/16, p. 3.

This court during its final charge to the jury once more reiterated that the minor complainant's testimony was to be evaluated by them in the same manner as they would the other witnesses:

> As I noted during your selection, I mentioned again at trial witness testimony during a trial is usually presented to you from the witness stand directly. However, the laws of Pennsylvania do permit testimony of young children to be taken in a setting other than the courtroom and presented live to you through electronic means. As you'll remember, [S.C.] testified during trial via such electronic means. [S.C.'s] testimony is to be evaluated by you in the same way

41

> in which you will evaluate the testimony of all other witnesses in the case as
> I've already so instructed.

N.T. 8/3/16, pp. 97-98. *See also* Pa. SSJI (Crim) 4.18.

Further, relevant to these related cautionary instructions about the complainant's testifying via a live, closed circuit television feed, "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions." *Commonwealth v. O'Hannon*, 557 Pa. 256, 262, 732 A.2d 1193, 1196 (1999) *citing Commonwealth v. LaCava*, 542 Pa. 160, 182, 666 A.2d 221, 231 (1995); *Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001), *certiorari denied*, 537 U.S. 1187, 123 S.Ct. 135, 154 L.Ed.2d 1018 (2003) *citing Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845 (2001) *citing Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995); *Commonwealth v. Spotz*, 587 Pa. 1, 57, 896 A.2d 1191, 1224 (2006) *quoting Commonwealth v. Brown supra* 567 Pa. at 289, 786 A.2d at 871 and *Commonwealth v. O'Hannon supra* 557 Pa. at 262, 732 A.2d at 1196.

[28] Based on the presented trial evidence, the sexual victimization of the minor complainant was ongoing from at least age seven (7) through shortly before his initial disclosure to K.C. a few months subsequent to S.C.'s 8th birthday.

It was relatedly without dispute that the minor complainant, S.C., throughout the times of the at issue statements was eight (8) years of old and the salient statute's age requirement was thus met. N.T. 3/24/15, pp. 4, 23. *See also* 42 Pa.C.S. §5985.1(a).

By the plain terms of this complaint on appeal, the Defendant neither challenges the age of the minor victim, his subsequent at bar testimonial appearance(s) nor the various statements' relevancy. *See* Statement of Matters Complained, No. 2. *See also Commonwealth v. Walter supra* and *Fidler v. Cunningham-Small*, 871 A.2d 231 (Pa.Super. 2005); and *Commonwealth v. Allhouse*, 614 Pa. 229, 36 A.3d 163 (2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2336 (2013). Resultantly, any arguments based on these statutory requirements is waived. *See* Pa.R.A.P. 1925(b)(4)(vii)("Issues not included in the statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Commonwealth v. Carpenter*, 955 A.2d 411, 415 (Pa.Super. 2008) *citing Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998); and *Commonwealth v. Baker*, 24 A.3d 1006, 1034-35 (Pa.Super. 2011) *citing Commonwealth v. Priest*, 18 A.3d 1235, 1239 Fn. 7 (Pa.Super. 2011) and *Commonwealth v. Jackson*, 10 A.3d 341, 347 Fn. 4 (Pa.Super. 2010).

[29] *See* Commonwealth Exhibits CM-1 – Jodi Kaplan's Forensic Interview Report and CM-2 – Audio Recording of December 8, 2014, Forensic Interview.

[30] *See* Commonwealth Exhibit C-3(B) – Anatomical Diagram(s). *See also* N.T. 3/24/15, p. 81.

[31] *See* Commonwealth Exhibit CM-3 – Audio Recording of Trooper Pipes' December 16, 2014, Interview.

[32] Although K.C. could not recall the exact date his brother advised him of the Defendant's sexual assaults, he did testify that it was on the same day the police were contacted. N.T. 3/24/15, pp. 8-9. The Criminal Complaint and Probable Cause Affidavit denote that the police responded to the residence on December 7, 2014, at 12:30 A.M. *See* Criminal Complaint and Probable Cause Affidavit.

[33] Defendant Strafford in setting forth his sufficiency challenge does not contend the prosecution's trial evidence failed to establish any of his convictions' necessary elements beyond the identification of the Defendant as the individual who committed these crimes. *See* Statement of Matters Complained, No. 4. Accordingly, these otherwise requisite elements of these three (3) offenses (involuntary deviate sexual intercourse, 18 Pa.C.S. §3123(b), indecent assault, 18 Pa.C.S. §3126(a)(7), and corruption of minors, 18 Pa.C.S. §6301(a)(1)(ii)) will not in this opinion be discussed. *See Commonwealth v. Veon*, 109 A.3d 754, 775 (Pa.Super. 2015), *appeal granted on other grounds*, 121 A.3d 954, 955 (Pa. 2015)("In order to preserve a challenge to the sufficiency of the evidence on appeal, *the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). *'Such specificity is of particular*

*importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.'* "). (Emphasis added.) *See also Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa.Super. 2002) and *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002). *See also* Pa. SSJI (Crim) 15.3123E, 15.3126C, and 15.6301A.

Similarly, as the Defendant has not averred through his appellate complaints statement a weight of the evidence challenge to his convictions at bar, such a claim on appeal, if now advanced, should as well be deemed waived. *See Commonwealth v. Veon supra* 109 A.3d at 775; *Commonwealth v. McCree supra* 857 A.2d at 192 *citing Commonwealth v. Lemon supra* 804 A.2d at 37 and *Commonwealth v. Seibert supra* 799 A.2d at 62. *See also* Statement of Matters Complained.

Moreover, any attack targeting the weight of the evidence was past waived given that Defendant Strafford did not pursue the same before this court. For a weight of the evidence argument to be properly raised on appeal, such a claim " ... must [have been] preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011). "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012) *citing Commonwealth v. Bond*, 604 Pa. 1, 16-17, 985 A.2d 810, 820 (2009). *See also* Pa.R.Crim.P. 607(a)(Comment).

[34] 18 Pa.C.S. §3123(b).
[35] 18 Pa.C.S. §3126(a)(7).
[36] 18 Pa.C.S. §6301(a)(1)(ii).

43