J-A07042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEAN ANTHONY SAMUELS | : | |
| | : | |
| Appellant | : | No. 971 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 30, 2024
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0001349-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED: JULY 1, 2025**

Appellant, Sean Anthony Samuels, appeals from the judgment of sentence imposed on May 30, 2024, by the Court of Common Pleas of Berks County. On appeal, he challenges the sufficiency of the identification evidence. Upon review, we affirm.

On March 16, 2022, S.M., a minor, was walking to school on Hill Road near City Park in the City of Reading when she noticed a person wearing black clothing hiding behind a tree. N.T. Trial, at 155-57. That person grabbed S.M.'s left arm, brandished a knife, and told S.M. to come with him or else he would kill her. *Id.* at 157-58. S.M. described the man as wearing a black blazer jacket, dark or black pants, and a black hat with red and yellow colors on it. *Id.* at 158-59. S.M. could not see any of the man's facial features because he was wearing a black ski mask that covered his nose, mouth, cheeks, and forehead. *Id.*

The man led S.M. behind a building where he forced S.M. to pull her pants down and penetrated her vagina with his penis. *Id.* at 162-64. Prior to the assault, S.M. saw the man pull out a condom in a black and red wrapper from his pocket, open it, and put it on. *Id.* at 165-66, 197. S.M. estimated that the entire attack lasted fifteen to twenty minutes. *Id.* at 166. The man then found a water bottle in her bookbag and made S.M. rinse her vagina. *Id.* at 167. He then used the water to rinse his and S.M.'s hands. *Id.* Before leaving the scene, the man took a red shirt from S.M.'s bookbag, as well as her cell phone. *Id.* at 169.

Based on the information provided by S.M., police located surveillance videos from the New Story school on Hill Road. *Id.* at 396. The video showed a black male wearing a black jacket, gray sweatpants, and a black hat with a red and green emblem on it. *Id.* at 396. He was carrying a red shirt. *Id.* Police took still shots from the video of the suspect, circulated them on a Facebook post, and asked for the public's help in identifying the individual. *Id.* at 397-98.

Oliver Charles, a security guard at Alvernia University on Penn Street in Reading, saw the Facebook post and contacted police to inform them that he had spoken to the man on the day in question. *Id.* at 258-59. Charles told police that in the afternoon of March 16, 2022, the man in the surveillance video approached him and asked to use his phone. *Id.* at 261. Charles described the man as black, medium build, and was wearing sweatpants and had something covering his hair that had green, red and yellow colors in it,

like a Jamaica or Ghana flag. *Id.* at 261-62. Although the man was wearing a face covering, Charles was able to see that the man had a beard because it was pushing the fabric out. *Id.* at 280. Because of the hair and face covering, Charles was unable to see the man's face or hair clearly, but could see his eyes and forehead. *Id.* at 262. Charles identified Appellant pretrial and in court as the person he spoke to on May 16, 2022. *Id.* at 264.

Charles informed police that Appellant told him he was assaulted the previous night and asked to use Charles' phone to call his girlfriend. *Id.* at 265. Appellant spoke to his girlfriend for a few minutes and then handed the phone back to Charles. *Id.* at 270-71. The girlfriend then called back, Appellant answered and provided his girlfriend with an address to pick him up. *Id.* at 271. During this interaction, Appellant also showed Charles a knife that he had on him. *Id.* at 266. When Charles later spoke with the police, he gave them the number that Appellant's girlfriend called from. *Id.* at 274.

Detective Charles Federico of the Reading Police Department traced that phone number back to Eugena Brown. *Id.* at 400. Through an investigation into Brown, Detective Frederico determined that Appellant was her boyfriend. *Id.* at 401. He then pulled Appellant's photo from JNET and compared it to the video from New Story and saw some similarities. *Id.* at 401.

While canvassing for evidence, police collected a red and black condom wrapper, a water bottle and a blue Dorito's bag[1] from the crime scene. *Id.* at 205-07. S.M.'s gold iPhone was recovered from a nearby sewer grate. *Id.* at 443-44. Those items were processed for DNA and fingerprints. *Id.* at 311. The only identifiable DNA on the items was that of the victim. *Id.* at 333. Other swabs contained a mixture of DNA, but there was not enough material for identification. *Id.* at 334. A total of seven prints were lifted from the items. *Id.* at 326. The fingerprint lifted from the red and black condom wrapper matched Appellant's left thumb print. *Id.* at 371, 381. The remaining prints were not clear enough for comparison. *Id.* at 378.

In addition to the surveillance videos recovered from the New Story School, police recovered several other videos from businesses in the area, as well as from the Video Safety Unit[2], from which they were able to track the suspect's movements on March 16, 2022. *Id.* at 451-58. Appellant admitted at trial that he was the person in the videos. *Id.* at 553.

In Appellant's initial interview with police, he denied knowledge of the attack and was adamant that he did not do it. *Id.* at 496-97. He admitted to being familiar with the area, having stayed in a shed nearby at one point. *Id.* at 499. Appellant further admitted to having a condom in or around City Park

---

[1] S.M. testified that the man removed a blue Dorito's bag from her bookbag and tossed it aside. N.T. Trial, at 168.

[2] Several cameras were installed at intersections throughout Reading that are controlled and maintained by the Reading Police Department. N.T. Trial at 451.

at some point, but did not provide a specific time frame. *Id.* at 500. Appellant's interview was audio and video recorded, and some portions were played for the jury.

Appellant testified at trial and explained that he did not previously provide police with the following information because he was drinking and using controlled substances for days at a time; therefore his memory about that day was not clear. *Id.* at 517. He admitted to being around City Park when the attack happened looking for a shed that he previously slept in. *Id.* at 521-22. While there, Appellant saw two people – one wearing all white and one wearing all black – standing up near a shed. *Id.* at 525-26, 535. Appellant turned away for a bit, and when he turned back the two people were gone. *Id.* at 537.

Thereafter, Appellant walked down the hill when two people came into his line of sight. *Id.* at 538-39. A man walked out first carrying a bag and a woman followed. *Id.* at 539. The man looked through the bag and started pulling things out while the woman told him something about being pregnant. *Id.* at 539-40. When Appellant walked by them, the man ran away. *Id.* at 541.

After they both left, Appellant picked up a bracelet, headphones and a cell phone from the ground. *Id.* at 543. Appellant did not realize it was a phone at first; he only saw money in the case. *Id.* at 544. While trying to get the money and/or phone out of the case, the man came back to the area looking for a phone. *Id.* at 545. Appellant lied and said he never saw one

- 5 -

and put it in his pocket instead. *Id.* Thereafter, Appellant picked up part of a red shirt that was on the ground. *Id.* at 546. Appellant thought the man was following him, so he threw the phone in a sewer grate. *Id.* at 546-47.

Appellant initially lied to the police about the information he had regarding what he saw, but admitted that he was the person in the videos. *Id.* at 553. He said that he was under the influence of alcohol during his interview and did not want to admit that because he was on probation. *Id.* at 554. Once Appellant "came out of withdraw" and "had some time to sit down and think about what happened[,]" he "remembered everything [that he testified to the jury]." *Id.* at 559. He denied raping anyone, but admitted to picking up the red shirt and phone. *Id.* at 559-60. Appellant said the man he saw wore all black, a long jacket, stone washed jeans, black shoes, a cloth mask, and a brimless hat with graffiti and colors on it. *Id.* at 560-61. Appellant, in contrast, wore a hat with a brim that had a bandana covered in marijuana leaves wrapped around it. *Id.* at 563.

After a three-day trial, a jury found Appellant guilty of rape by threat of forcible compulsion[3], two counts of aggravated indecent assault[4], possession of instrument of crime[5], terroristic threats[6], and simple assault[7]. He was designated as a sexually violent predator and sentenced to an aggregate

---

[3] 18 Pa.C.S.A. § 3121(a)(2).
[4] 18 Pa.C.S.A. § 3125(a)(3), (8).
[5] 18 Pa.C.S.A. § 907(a).
[6] 18 Pa.C.S.A. § 2706(a)(1).
[7] 18 Pa.C.S.A. § 2701(a)(3).

imprisonment term of 28 ½ to 60 years. This timely appeal followed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises a sole issue for our review:

Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt the crimes of rape by threat of forcible compulsion; aggravated indecent assault – complainant less than 16; aggravated indecent assault – threat of forcible compulsion; possession of instrument of crime; terroristic threats; and simple assault by physical menace when there was no direct or circumstantial evidence to prove these actions were committed by the Appellant[.]

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Our standard of review when faced with a challenge to the sufficiency of the evidence is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (citations omitted). "In addition to proving the statutory elements of the

crimes charged . . ., the Commonwealth must also establish the identity of the defendant as the perpetrator of the crime." ***Commonwealth v. Strafford***, 194 A.3d 168, 175 (Pa. Super. 2018) (citation omitted). Identification evidence does not need to be positive and certain to sustain a conviction. ***Commonwealth v. Williams***, 255 A.3d 565, 579 (Pa. Super. 2021). "Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be considered to establish identity in conjunction with other circumstances and identification testimony." ***Id.*** Any uncertainty in the identification testimony goes to the weight of the evidence. ***Strafford***, 194 A.3d at 175.

Here, Appellant is challenging that the Commonwealth failed to prove that he was the perpetrator of the crimes. He does not challenge any other element of the crimes for which he was convicted. Appellant contends that the Commonwealth failed to present sufficient evidence that he committed the crimes because of four differences between the description of the man who attacked S.M. and the photos of himself walking down the street: (1) pant color (gray v. black); (2) hat (brim v. no brim); (3) facial hair (beard v. no beard); and (4) S.M. smelled cologne on her assailant. Appellant's Brief, at 13.

The evidence, viewed in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to establish Appellant as the perpetrator. The Commonwealth presented both direct and circumstantial identification evidence. S.M. testified that her assailant pulled a red and black condom from

his pocket, opened it and put it on before attacking her. Police recovered a red and black condom wrapper from the crime scene and processed it for fingerprints. The print lifted from the condom wrapped matched the print from Appellant's left thumb.

Additionally, S.M. testified that her assailant took a red shirt from her book bag, as well as her cell phone. Video surveillance shortly after the attack showed Appellant carrying a red shirt. Appellant also admitted to "picking up" part of a red shirt and a cell phone before discarding the cell phone in a nearby sewer grate. That cell phone was recovered and determined to belong to S.M. Moreover, Charles identified Appellant both pretrial and in court as the person with whom he spoke outside of Alvernia University on May 16, 2022.

Appellant argues that the videos of himself did not match S.M.'s description of her attacker. The jury heard S.M.'s description of her attacker and viewed the still photographs, as well as the surveillance videos of Appellant. The jury also heard Appellant's version of events from that day. As the fact finder, the jury was free to believe all, part, or none of the testimony and evidence presented. **Brown**, **supra.** Moreover, "[a]ny uncertainty in the identification testimony goes to the weight of the evidence[,]" which was not raised on appeal. **Strafford**, **supra.** Accordingly, we conclude there was sufficient evidence to sustain Appellant's convictions.

Judgment of sentence affirmed.

Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/01/2025