J-S34032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: C.A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 677 MDA 2025 |

Appeal from the Order Entered May 20, 2025
In the Court of Common Pleas of Lycoming County Juvenile Division at
No(s):  CP-41-JV-0000010-2025

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

DISSENTING MEMORANDUM BY SULLIVAN, J.:          **FILED: JUNE 25, 2026**

After a thorough review of the record and the trial court opinion in this matter, I believe the trial court erred as a matter of law by misapplying the factors used to evaluate the admission of statements under the Tender Years Hearsay Act ("TYHA"), failing to address certain of the factors, and not considering the totality of the evidence.  Therefore, I respectfully dissent.

This Court has held that in deciding the admissibility of a child-victim's out-of-court statement to a third-party under the TYHA, a trial court should consider, *inter alia*, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." ***Commonwealth v. Strafford***, 194 A.3d 168, 173 (Pa. Super. 2018) (quotation marks, citation, and brackets omitted); ***see also Commonwealth v. Lyons***, 833 A.2d 245,

255 (Pa. Super. 2003) (explaining courts are not limited to this specific set of factors when determining whether TYHA testimony has sufficient indicia of reliability).  Under the TYHA, "a trial court must consider the *totality of the circumstances* when determining whether a child's out-of-court statement is trustworthy."  *Interest of D.C.*, 263 A.3d 326, 335 (Pa. Super. 2021) (emphasis added).

Here, in its brief amended opinion, the trial court misapplied certain of the relevant factors, failed to address other factors, and did not look at the totality of the evidence, instead focusing almost exclusively on the issue of alleged custody disagreements between the victim's parents ("Mother" and "Father").[1]  *See* Amended Trial Court Opinion, 5/22/25, at 4-6 (unnumbered). Because the trial court did not look at the totality of the circumstances and failed to include several relevant facts in its opinion, I include a more detailed version of the evidence, not to engage in improper fact-finding, but to demonstrate the trial court's failure to assess the factors under the proper legal standard.

### Statements Made to Maternal Grandmother ("MGM") and Mother

---

[1] We note the accused juvenile is Father's younger brother ("Uncle") and both reside with Father's mother, the victim's paternal grandmother).  *See* N.T., 5/15/25, at 15, 17, 21.

Here, the record reflects MGM picked up the victim at a custody exchange spot after the victim spent the weekend with Father. *See* N.T., 5/15/25, at 15-17. As MGM and the victim were walking to MGM's house, the victim said she had to tell her "something." *Id*. at 18. The victim then stated "Uncle" was "kissing [my] pee bug." *Id*. MGM said he was not allowed to do that and the victim responded it was happening in his bedroom while the others in the household were asleep. *See id*. On cross-examination, MGM acknowledged she was aware of custody issues between Father and Mother. *See id*. at 20-21. MGM denied having any further discussions of the abuse with the victim. *See id*. at 23. She noted the victim was not told in advance that they were going to see the police or a forensic interviewer. *See id*.

Mother testified that MGM called her and asked her to come over to her house because the victim had something to tell her. *See id*. at 26. Mother said when she arrived the victim was "crying and very upset." *Id*. at 27. The victim said she was asleep, as was the rest of the household, when Uncle woke her, took her into his bedroom, licked her and made her lick him "down there", and then she made masturbatory hand gestures. *Id*. at 27-28. The victim explained this had happened several times, but she was afraid and Uncle had told her not to tell anybody. *See id*. at 28-29. Mother corroborated MGM's testimony that they took the victim to the police and to the forensic interview but never questioned the victim any further about the abuse. *See id*. at 29-35. On cross-examination, Mother acknowledged she was unhappy

with the 50-50 custody split and that Father did not pay child support but stated she had not yet filed for a modification of custody. *See id*. at 35-36.

Based upon this testimony, the trial court barred MGM's and Mother's proposed testimony under the TYHA. In evaluating the factors, the court concluded with respect to spontaneity, although the four-year-old victim's statements to MGM were "arguably spontaneous," the statements she made to her mother ("Mother") were not.[2] *See* Amended Trial Court Opinion, 5/22/25, at 5 (unnumbered). With respect to the victim's statements to Mother, the trial court states Mother already knew the content of the victim's statements to MGM and then questioned her about them. *See id*. at 5 (unnumbered).

The trial court also found the statements to MGM and Mother were inconsistent, although the court did not explain what exactly it found inconsistent between the statements to MGM and to Mother. *See* Amended Trial Court Opinion, 5/22/25, at 5 (unnumbered). The trial court never addressed the factor concerning the victim's mental state at the time of disclosure. *See* Amended Trial Court Opinion, 5/22/25, at 1-6 (unnumbered). The trial court also did not address, in the context of MGM's and Mother's testimony, whether the victim used language which would be considered age-

_____

[2] It is all together odd that the trial court states that child's statements to MGM are "arguably spontaneous" and then abruptly ceases any further analysis after that phrase and then concludes without further review that "arguably spontaneous" fails to meet the acceptable standard.

inappropriate for a four-year-old. ***See id***. The trial court did not address whether ***the victim*** had motive to lie, instead it gave heavy (almost exclusive) weight to its conclusion that ***MGM*** and ***Mother*** had reason to lie about ***Uncle*** abusing the victim because of the custody dispute between ***Mother*** and ***Father***. ***See id***. at 5-6.

For the following reasons, I believe the trial court's decision to bar the testimony of MGM and Mother was error. Firstly, the trial court appears to have interpreted the word "spontaneous" employing a layman's or dictionary definition, rather than a legal definition. ***See id***. The court essentially equated spontaneity with an automatic or sudden response. This Court has determined spontaneity of the child/victim statement under the TYHA, "is typically discussed in the sense of not being asked a suggestive or leading question[.]," and rejected an assertion of "spontaneity" as akin to an excited utterance. ***Commonwealth v. Newcomb***, 311 A.3d 604 (Pa. Super. 2023) (unpublished memorandum, at *5) (citing, *inter alia*, ***Stafford***).[3] ***See also Commonwealth v. Schweikarth***, 339 A.3d 391 (Pa. Super. 2025) (unpublished memorandum, at *5-*6) (concluding victim's statements were spontaneous under the TYHA when made in response to her best friend's question if something was bothering her).

---

[3] ***See*** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

Clearly, the victim's statements to MGM were spontaneous in both senses of the word, as the uncontested testimony shows the Victim brought up the topic with MGM following a weekend spent with Father and Uncle. **See** N.T., 5/15/25, at 15-21. As to the victim's statements to Mother, the record does not support the trial court's conclusion that the victim only disclosed to Mother in response to questioning.[4] Rather, Mother's uncontradicted testimony established she went to MGM's home, found the victim upset and crying, and the victim immediately disclosed the abuse to her. **See id**. at 27. It was only **after** this disclosure that Mother briefly questioned the victim before calling the police. Further, Mother testified that none of her questions were leading but sought only to clarify she understood what the victim was saying. **See id**. at 27. Thus, I believe the trial court erred as a matter of law in concluding the victim's disclosures to Mother and MGM were not spontaneous *vis-à-vis* the TYHA reliability analysis. **See Commonwealth v. Barnett**, 50 A.3d 176, 184, 187 (Pa. Super. 2012) (affirming admission of mother's statements regarding her daughter's disclosure of sexual abuse even though mother specifically questioned daughter after being informed by a relative that the defendant had abused another child); **see also Schweikarth**, **supra**; **Newcomb**, **supra**.

---

[4] The testimony regarding what Mother knew when she came over to MGM's house is equivocal; it is not clear if she knew the victim had made an allegation of sexual abuse against Uncle or just that something had happened during Father's custodial period. **See** N.T., 5/15/25, at 20, 22, 25-26.

Second, the trial court erred in finding the victim's statements were not consistent. The trial court did not point to any inconsistency between the statements to MGM and Mother. While her statement to Mother was slightly more detailed, in each statement the victim named Uncle as her abuser, stated the abuse occurred at night while everyone was sleeping, claimed Uncle performed oral sex on her and made a hand gesture indicative of masturbating a man. **See** N.T., 5/15/25, at 18, 27-28.

Although a victim's mental state at the time of disclosure is a significant factor in the evaluation of the reliability of a statement pursuant to the TYHA, the trial court here did not discuss it, nor explain why it failed to consider this important factor. **See** Amended Trial Court Opinion, 5/22/25, at 1-6 (unnumbered). Review of the record shows both MGM and Mother testified the victim was upset and crying when she made the disclosures. **See** N.T., 5/15/25, at 18, 27. This Court has affirmed the admission of TYHA testimony where, *inter alia*, the victim reacted to seeing the defendant's picture on television by shouting and trying to crawl away. **See Lyons**, 833 A.2d at 256; **see also Barnett**, 50 A.3d at 184, 187 (affirming admission of one of the victims' statements to her mother, where victim was uncomfortable and awkward during the disclosure); **Commonwealth v. Moore**, 258 A.3d 552 (Pa. Super. 2021) (unpublished memorandum at *9-*10) (admitting testimony under TYHA where victim was upset and crying during her disclosure of abuse).

The trial court likewise did not discuss the use of age-inappropriate language with respect to the victim's disclosure to MGM and Mother. **See** Amended Trial Court Opinion, 5/22/25, at 1-6 (unnumbered). It assessed this factor as "neutral" because of the lack of testimony offered on the subject. **See** Amended Trial Court Opinion, 5/22/25, at 2, 5 (unnumbered). **See id**. at 5. Again, my review of the record shows otherwise. MGM testified the victim said Uncle "kiss[ed] her pee bug." N.T., 5/15/25, at 18. Certainly, "kissing" a "pee bug" is appropriate language for a four-year-old describing oral sex. **See Barnett**, **supra** at 183-84, 187-88; **Moore**, **supra**.

In finding the victim's statements to MGM and Mother inadmissible because they had a motive to lie, the trial court incorrectly analyzed this factor. The analysis of this factor focuses on whether **the victim** had a motive to lie, not whether the proposed witnesses may have a motive to lie. **See Strafford**, 194 A.3d at 174 (affirming trial court's admission of TYHA testimony where there was no indication the **child victim** had a motive to fabricate); **Barnett**, 50 A.3d at 187-88 (rejecting claim that victim had a motive to lie because of minor discrepancies regarding recent talks about sex at her school and with her mother); **Lyons**, 833 A.2d at 255 (stating "[t]he main consideration for determining when hearsay statements made by a child witness are sufficiently reliable [to be admitted under the TYHA] is whether **the child declarant was particularly likely to be telling the truth when the statement was made**") (emphasis added); **see also Commonwealth**

*v. Melendez*, 2026 WL 1122141 (Pa. Super. Apr. 24, 2026) (unpublished memorandum at *5-*6) (affirming trial court's decision to admit statements made by the victim to her mother and a forensic interviewer despite defendant's claim the victim had a motive to lie because she wanted to get him in trouble). The record reveals the trial court did not discuss the victim's possible motive to lie, if any. The court also did not discuss testimony from any witness that child was being coached to lie.

Regarding the issue of custody proceedings, while the fact of on-going custody proceedings and any bias the witnesses may have is *a* factor for a court to consider, it is not dispositive. **See Commonwealth v. Outlaw**, 329 A.3d 617 (Pa. Super. 2024) (unpublished memorandum at *3); **see also Commonwealth v. Cope**, 304 A.3d 762 (Pa. Super. 2023) (unpublished memorandum at *10) (rejecting defendant's claim **child victim had a motive to lie** because he did not disclose abuse until being directly questioned by his mother who had pending felony charges against her, and noting mother had been untruthful in the past).

Here, MGM briefly testified that there was on-going custody litigation. **See** N.T., 5/15/25, 20-21. MGM did not express any animus against Father or Uncle, and the trial court specifically found the victim's disclosure to her was spontaneous. **See** Amended Trial Court Opinion, 5/22/25, at 4 (unnumbered). The trial court does not point to anything except its own

unsubstantiated suspicions to support its assertion of MGM's bias. *See id*. at 5-6 (unnumbered).

As to Mother's bias, it is plain Mother was unhappy with the 50/50 custody split and the fact she did not receive child support. *See* N.T., 5/15/25, at 35-36. However, there is nothing in the record that shows there is any on-going court action, and Mother gave uncontradicted testimony she had not filed anything at that point. *See id*. Furthermore, Mother's unhappiness with what had been the current custody arrangement with the child's Father, does not explain why she would have bias against Uncle, given that a custody court could have retained the 50/50 custody so long as Father was no longer living with Uncle and agreed that Uncle could not have contact with the victim. Again, given Mother's testimony about the circumstances underlying the victim's disclosure, the trial court's speculations regarding bias are insufficient to defeat the weight of the other factors supporting the admission of the victim's statements. *See Outlaw*, *supra*, at \*3 (affirming trial court's admission of TYHA testimony from a mother and a maternal grandmother against father, despite an on-going custody dispute, noting their bias goes to the weight of their testimony and not admissibility).

Although the list of factors set forth in **Strafford** are not exclusive, they are instructive for application of the totality of the circumstances test employed in determining the reliability and admissibility of a child victim's statement under the TYHA. *Id.* 194 A.3d at 173. The trial court here

depended almost exclusively on MGM's and Mother's possible bias in a custody issue with child's Father (not the Uncle) and did not employ other suggested factors or consider the factors with an eye toward the child victim.

Given the lack of analysis incorporating at least some of the reliability standards and the focus of attention on MGM and Mother instead of the reliability of the child victim's statements, I believe the trial court erred in finding the statements inadmissible under the TYHA and I would reverse that ruling.

### Statements Made to the Forensic Interviewer

Forensic interviewer Sherry Moroz ("Ms. Moroz") testified as an expert witness at the *in camera* hearing and the trial court viewed a video[5] of the interview. ***See*** N.T. 5/15/25, at 4-6; ***see also*** Amended Trial Court Opinion, 5/22/25, at 1 (unnumbered). Ms. Moroz initially began to testify about her methods and the way she conducts an interview, however, the trial court cut off that portion of her testimony, asking if it was "necessary." N.T., 5/22/25, at 8. Ms. Moroz stated the victim disclosed to her that Uncle touched her in between her legs, wiggled his fingers up and around her genitals and again made a hand gesture that showing he had her masturbate him. ***See id***. at 9. Ms. Moroz was unable to recall the victim's mental state during the interview

---

[5] The video of the forensic interview was not forwarded to this Court on appeal. I remind the Commonwealth that, as appellant, it bears the responsibility to ensure the record contains all materials necessary to the decision of an issue.

but said she did not recall the victim using any age-inappropriate language for a four-year-old. *See id*. Ms. Moroz further averred that the statements the victim made to her during the interview were consistent. *See id*. at 9-10. The Commonwealth attempted to ask Ms. Moroz if she felt the victim's statements were a "genuine response" and the trial court sustained an objection to that question. *Id*. at 10.

In discussing its decision that the forensic interview and Ms. Moroz's testimony was not admissible, the trial court co-mingled its analysis of Ms. Moroz's testimony with its analysis of MGM and Mother's testimony. *See id*. at 5-6 (unnumbered). Thus, it is difficult to discern the court's exact reasoning. *See id*.

As discussed above, the trial court misapplied the common definition of the word "spontaneous" to its analysis and did not define "spontaneous" in the legal sense. *See id*. The trial court does not explain why the victim's statements to Ms. Moroz were not spontaneous, although it earlier emphasized that Mother and MGM drove the victim to the forensic interview, which infers the trial court equated the passage of time with a lack of spontaneity and/or that being driven by Mother and MGM influenced the victim's statements to Ms. Moroz. *See id*. at 2 (unnumbered).[6] It then

_____

[6] In its questioning and in its opinion, the trial court emphasized that Mother and MGM drove the victim to the police and to the forensic interview. It is not clear who the trial court believed would have driven a young child to these
*(Footnote Continued Next Page)*

- 12 -

concluded statements made during a scheduled forensic interview cannot be spontaneous. *See id*. at 5.

The court specifically found the victim's statements were "significantly" different because she described molestation, and made the identical hand gesture, to Ms. Moroz while describing oral sex to MGM and Mother. *Id*. at 5. Even though the trial court had the benefit of the video, it did not discuss the victim's mental state during the disclosure to Ms. Moroz. *See id*. at 5-6.

The trial court acknowledged that Ms. Moroz testified she did not recall the victim using any language that would not be appropriate to her age and maturity level yet still found that factor "neutral". Again, the trial court had the benefit of viewing the interview tape and does not cite any scientific, medical, or otherwise age-inappropriate language used by the victim in the video. The trial court also did not address why the victim had a motive to lie to Ms. Moroz, only stressing that MGM and Mother had a motive to fabricate allegations against the Uncle because of the custody dispute with Father. *See id*. at 6.

I see no legal basis for the exclusion of Ms. Moroz's testimony and the forensic interview. When the legal meaning of "spontaneous" specific to the TYHA and adopted in Pennsylvania case law is applied to the victim's

---

interviews and the court cites no legal support for the insinuation that statements made during a forensic interview or to the police are only admissible under the TYHA if a neutral third-party transports the child.

statements to Ms. Moroz, they are clearly spontaneous; nothing of record supports a finding Ms. Moroz asked any suggestive or leading questions. *See* N.T., 5/15/25, at 7, 10-11 (Ms. Moroz testified non-leading questions are asked in a forensic interview). Moreover, if the trial court's interpretation of "spontaneous" were applied, testimony or video involving a forensic interviewer would never be admissible because forensic interviews occur subsequent to disclosure of child abuse to another individual. This simply defies common sense, and is contrary to Pennsylvania law. *See Melendez*, *supra* (affirming admission of a forensic interview under the TYHA where "[t]he victim was interviewed by a professional forensic interviewer in a neutral location outside the presence of any other person and was asked non-leading and non-suggestive questions, which resulted in lengthy and detailed disclosures.").

The trial court also found the victim's statements to Ms. Moroz were not consistent, explaining, although the four-year-old victim used masturbatory gestures to describe the abuse to MGM, Mother, and Ms. Moroz, she told MGM and Mother that Uncle licked her genitals and described him fingering her genitals to Ms. Moroz. *See* Amended Trial Court Opinion, 5/22/25, at 5 (unnumbered). However, there is a difference between a child being consistent in claiming abuse and a child making identical statements each

time.[7]   We have long held minor inconsistencies or contradictions in statements do not prohibit their admission under the TYHA.  **See Newcomb**, 311 A.3d 604, at *6.  The victim consistently named Uncle as her abuser, consistently made masturbatory hand gestures to demonstrate what occurred, and consistently stated the abuse occurred multiple times at the house while the rest of the household was asleep.  Although the victim told MGM and Mother that Uncle had performed oral sex on her and had her perform oral sex on him, and showed a hand gesture indicating he made her masturbate him, and told Ms. Moroz about an incident where Uncle touched her vaginal area and made the identical hand gesture, there is no reason to conclude on this record that Uncle had not committed all those types of abuse on different occasions.  Thus, I would conclude the trial court erred in finding the victim made inconsistent statements.  **See id**. (affirming trial court finding of consistency in repetition, where child disclosed separate instances of abuse concerning different acts by the same abuser and in one instance contradicted statements she had made in an earlier interview).

To the extent the trial court weighed a motive to fabricate to bar Ms. Moroz's testimony about the victim's disclosures to her, this is plain error. There is no indication Ms. Moroz had any involvement in, or knowledge of, any

_____

[7] In fact, if a young child made identical statements each time in describing abuse, a trained interviewer would be likely to suspect the child was being coached.  Unlike a mother or grandmother, a forensic interviewer such as Ms. Moroz is trained to follow up on details and descriptions children give.

custody proceedings, or had any relationship with MGM or Mother that would show bias. Moreover, Ms. Moroz is a trained forensic interviewer, who testified as an expert, undoubtedly taught to spot "coaching" of a child.

For the reasons discussed above, I believe the trial court committed errors of law in its evaluation of the TYHA factors and abused its discretion by refusing to admit the testimony of Ms. Moroz. I would reverse the trial court's order and direct the trial court to admit the child's statements to MGM, Mother and Ms. Moroz pursuant to the TYHA. Accordingly, I respectfully dissent.